# **EXHIBIT A**

**Cowan Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SIO2 MEDICAL PRODUCTS, INC., *et al.*,[1] | ) ) ) | Case No. 23-10366 (JTD) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**DECLARATION OF TYLER W. COWAN IN
SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS
TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, Tyler W. Cowan, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I submit this declaration (this "Declaration") in support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief (the "DIP Motion").[2]

2. I am a Managing Director and Co-Head of the Restructuring & Capital Solutions Group, North America at Lazard Frères & Co. LLC ("Lazard"), the primary U.S. operating

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SiO2 Medical Products, Inc. (8467); Advanced Bioscience Labware, Inc. (1229); and Advanced Bioscience Consumables, Inc. (2510). The location of the Debtors' principal place of business and service address in these chapter 11 cases is 2250 Riley Street, Auburn, Alabama 36832.

[2] The facts and circumstances supporting this motion are set forth in the *Declaration of Yves Steffen, Chief Executive Officer of SiO2 Medical Products, Inc., in Support of Chapter 11 Filing and First Day Motions* (the "Steffen Declaration"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 29, 2023 (the "Petition Date") and incorporated by reference herein. Capitalized terms used but not immediately defined in this Declaration shall have the meanings assigned to them elsewhere in this Declaration, the DIP Motion, or the Steffen Declaration, as applicable.

subsidiary of a preeminent international financial advisory and asset management firm founded in 1848, which has its principal office at 30 Rockefeller Plaza, New York, New York 10012.

3. Lazard, together with its predecessors and affiliates, has been advising clients around the world for 175 years. Lazard has dedicated professionals who provide restructuring services to its clients and the current managing directors, directors, vice presidents, associates, and analysts of Lazard have extensive experience working with financially-troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings. Lazard and its principals have advised debtors, creditors, equity constituencies, and government agencies in over 500 restructurings, representing over $1 trillion in debtor assets, since 1990. Lazard's professionals have extensive experience providing strategic and financial advisory services, including in restructuring, mergers and acquisitions, and capital raises, to companies and their investors in numerous industries, including healthcare, retail, metals & mining, power & energy, financial services, oil & gas, telecom, media, and automotive, among others.

**Background and Qualifications**

4. Since joining Lazard in 2003, I have advised companies and creditors with respect to in-court and out-of-court restructurings, recapitalizations and reorganizations, including, among others, 24 Hour Fitness, Alpha Natural Resources (advisor to Rice Energy, the stalking horse bidder for certain gas assets), Atlas Iron, Bed Bath & Beyond, Belk, Blackboard, Boart Longyear (advisor to bondholders), Brazos Electric Power Cooperative (advisor to the Unsecured Creditors' Committee), Cengage Learning, Chassix, Claire's Stores, Dex Media (formerly R.H. Donnelley), Energy Future Holdings (advisor to the TCEH Creditors' Committee), First Energy Solutions, Foresight Energy (advisor to secured lenders), Forever 21, The Great Atlantic & Pacific Tea Company, Hostess (advisor to secured lenders), iFIT Health & Fitness, Illinois Power Holdings (advisor to Dynegy), Intelsat (advisor to convertible noteholders), J.Crew, Local Insight Media,

Longview Power/Mepco, Macy's, Neiman Marcus, Party City (advisor to secured noteholders), Patriot Coal (advisor to Peabody Energy), Peabody Energy, Remington Outdoor, Tops Markets (advisor to secured noteholders), United States Enrichment Corp., Walter Energy (advisor to first lien lenders), Westgate Resorts, and Westmoreland Resource Partners.  I have also advised companies regarding capital raises, mergers, acquisitions, and divestitures.  Pursuant to these engagements, I have worked on a variety of financings for troubled companies, including a number of DIP financings.  Additionally, I have provided testimony in the following bankruptcy cases: *In re Intelsat S.A.*, No 20-32299 (KLP) (Bankr. E.D. Va. Dec. 10, 2021) (testified for an ad hoc group of convertible noteholders); *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. June 15, 2020); *In re Neiman Marcus Group Ltd.*, Case No. 20-32519 (Bankr. S.D. Tex. May 8, 2020); *In re Chinos Holdings, Inc. (JCrew Group, Inc.)*, No. 20-32181 (KLP) (Bankr. E.D. Va. May 5, 2020); *In re Forever 21*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 10, 2019); *In re Westmoreland Coal Company*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Jan. 23, 2019) (testified for Westmoreland Resource Partners, LP); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio Apr. 6, 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Mar. 19, 2018); *In re Peabody Energy Corporation*, No. 16-42529 (BSS) (Bankr. E.D. Mo. Jan. 11, 2017); *In re Walter Energy, Inc.*, No. 15-02741 (TOM) (Bankr N.D. Ala. Dec. 1, 2015), *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Nov. 12, 2013) (testified for an ad hoc group of first lien lenders); and *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Feb. 22, 2012).  Prior to joining Lazard in 2003, I attended Northwestern University where I graduated with a Bachelor of Science in engineering.

5.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Lazard team, the Debtors'

3

management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Lazard as a professional proposed to be retained by the Debtors, subject to approval by this Court. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

### Lazard Retention

6.   In late 2022, the Company retained Lazard to assist with a capital raise and marketing process. Lazard worked closely with the Capital Raise Committee to try to procure an out-of-court solution for the Company. Since turning to a chapter 11 process, the Capital Raise Committee asked Lazard to expand its efforts toward a more wide-spread marketing process. Lazard, with the assistance of the Capital Raise Committee, developed a Confidential Information Memorandum and began contacting various potential buyers prior to these chapter 11 cases. Through these months of advising the Debtors, members of the Lazard team and I are familiar with the Debtors' capital structure, liquidity needs, and business operations.

### The Debtors' Efforts to Secure Financing

7.   Prior to commencing any DIP financing process, the Debtors recognized that it would be particularly difficult to secure financing because time was limited, all of the Debtors' cash and material assets are encumbered by existing liens under their prepetition debt, and their prepetition lenders indicated that they would not consent to a "priming" DIP financing provided by a third party. In light of this, Lazard understood that to obtain third-party DIP financing, the Debtors might require engaging in a protracted and costly priming fight or valuation dispute with

their prepetition lenders at the very outset of these chapter 11 cases. And regardless of the prospects of success, the expense and disruption associated with complex litigation on the first day would seriously jeopardize the Debtors' reorganization efforts, as already strained liquidity would be required to fund such a fight.

8. Notwithstanding these concerns, the Debtors engaged with numerous parties to potentially fund these chapter 11 cases. Specifically, my team and I contacted approximately eight third-party financial institutions and four existing investors to determine whether any of these parties would be willing to provide postpetition financing to the Debtors. No party other than Oaktree has provided the Debtors with an executable out-of-court or postpetition financing facility.

9. As the likelihood of an out-of-court solution diminished, in addition to the other parties contacted in connection with providing potential post-petition financing, the Debtors engaged Oaktree to explore a potential postpetition financing. The Debtors and their advisors held numerous discussions and negotiations with Oaktree and its advisors, exchanging several term sheets and mark-ups. As a result, the DIP Facility's terms and conditions improved to the Debtors' benefit. Ultimately, after extensive arm's-length negotiations, the Debtors secured the proposed DIP Facility from Oaktree.

10. The DIP Facility and Restructuring Support Agreement are complementary, and are all a result of extensive negotiation the Debtors had with Oaktree, and together provide a structure for an expansion of the Debtors' marketing process postpetition. The DIP Facility will be secured with a perfected priming first lien on substantially all of the Debtors' assets except for a perfected junior priority lien on all DIP Collateral that secures obligations that are subject to

5

Permitted Prior Liens. As such, the DIP Facility does not purport to prime the Permitted Prior Liens. Oaktree is consenting to granting a priming lien on its collateral.

11. As a result of this process and my knowledge of the marketplace for postpetition financing, I believe the DIP Facility represents the best available financing under the circumstances.

**The Fees, Rollup, and Milestones Are Fair and Reasonable Under the Circumstances**

12. The DIP financing negotiations centered around, among other things, the fees and roll-up of approximately $60 million of Oaktree's prepetition debt (the "Roll-Up Amount") contemplated by the proposed DIP Facility. These fees and the Roll-Up Amount were the subject of arm's-length and good-faith negotiations between the Debtors and Oaktree, are integral components of the overall terms of the DIP Facility, and were required by Oaktree as consideration for the extension of postpetition financing. Given volatility in the Debtors' receipts, the Debtors' projected cash burn, and the fact no other party has put forward an actionable financing proposal, among other reasons, I believe the fees and Roll-Up Amount are reasonable and appropriate under the circumstances, especially where, as here, Oaktree has agreed to fund the Debtors' ongoing operating losses and the cost of these chapter 11 cases, including the 60 day marketing process to maximize value of the Debtors' estates for their stakeholders.

13. The DIP Facility is also expressly linked to certain case milestones, which track the timeline set forth in the Restructuring Support Agreement and provide a structure for the Debtors' anticipated chapter 11 process, allowing the parties to continue developing and pursuing a comprehensive marketing process for the Debtors' business. These milestones were required by Oaktree as a condition to providing the DIP Facility and were a critical inducement for Oaktree to provide the Debtors with the liquidity necessary to operate their business and fund these chapter

11 cases. The Debtors believe the milestones provide adequate time to implement their restructuring.

### **The DIP Facility Is Fair and Reasonable Under the Circumstances**

14. The proposed DIP Facility is critical to the Debtors' ability to fund its operations and the marketing process while providing sufficient liquidity without creating a value-destructive "priming fight" or valuation dispute at the outset of these chapter 11 cases. Indeed, no other party within the Debtors' capital structure came forward with an actionable financing proposal. Moreover, I believe the DIP Facility is an essential component to funding the Debtors and providing a path to emergence and is critical to reassure customers and vendors, as well as protect operations. As a result, based on my experience with DIP financing transactions, as well as my involvement in the negotiation of the DIP Facility and pursuit of alternative postpetition financing proposals, I believe the DIP Facility, including the milestones, fees, and liens included therein, are appropriate and reasonable, are the only viable source of postpetition financing reasonably attainable under the circumstances, and is in the best interests of the Debtors and is necessary to avoid irreparable harm to the Debtors and their estates.

[*Remainder of page intentionally left blank*]

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 29, 2023  
New York, New York

*/s/ Tyler W. Cowan*  
Name: Tyler W. Cowan  
Title: Managing Director and Co-Head of Restructuring & Capital Solutions North America  
Lazard Frères & Co. LLC