# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SIO2 MEDICAL PRODUCTS, INC. et al,[1] | ) | Case No. 23-10366 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | Hearing Date: April 20, 2023 at 2:00 p.m. (ET) |
| | ) | Obj. Deadline: April 13, 2023 at 4:00 p.m. (ET) |
| . | ) | Re: Docket No. 17 |

## LIMITED OBJECTION OF A. ENTERPRISES, LLC AND ROBERT S. ABRAMS TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) ESTABLISHING BIDDING PROCEDURES, (II) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

A. Enterprises, LLC and Robert S. Abrams (together, "Abrams") hereby file this limited objection (the "Objection") to the *Motion of Debtors for Entry of an Order (I) Establishing Bidding Procedures (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [D.I. 17] (the "Motion"),[2] and respectfully represent as follows:

### PRELIMINARY STATEMENT[3]

1. Robert S. Abrams founded SiO2 Medical Products, Inc. (the "Company," and, together with its above-captioned affiliates, the "Debtors") to develop products to fill a critical need for the production of glass-lined syringes and vials for the treatment of pre-mature

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SiO2 Medical Products, Inc. (8467); Advanced Bioscience Labware, Inc. (1229); and Advanced Bioscience Consumables, Inc. (2510). The location of the Debtors' principal place of business and service address in these chapter 11 cases is 2250 Riley Street, Auburn, Alabama 36832.

[2] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Motion and accompanying documents or the *Declaration of Yves Steffen, Chief Executive Officer of SiO2 Medical Products, Inc. in Support of Chapter 11 Filing and First Day Motions* [D.I. 15] (the "Steffen Declaration"), as applicable.

[3] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them in the Objection, *infra*.

babies. Since its inception, Abrams has driven the Company to technological advancements resulting in the development of critical life-saving products through utilization of an intellectual property portfolio consisting of 245 currently-issued patents, over 30 pending patent applications, and more than 8,000 patent use cases.

2. Although the Company has faced significant financial and economic challenges over the last decade, bankruptcy was not the only alternative available to the Company. Prior to the Petition Date, in early 2023, the Company failed to pursue available financing from the federal government, or obtain promised financing from other investors. Instead, the Company embarked on a questionably-authorized, rapid-fire bankruptcy process under a Restructuring Support Agreement supported solely by Oaktree and ostensibly solely benefiting Oaktree.

3. This Objection is limited solely to the infirmities of the purported prepetition "marketing process," the unduly short Bid Deadline for a Company of this value and complexity, and the selection of the Oaktree floor bid amount proposed in the Motion, but Abrams reserves all rights with respect to the pre-petition management of the Company, the decision and corporate authorization to file these Chapter 11 Cases, and to seek appointment of an examiner or chapter 11 trustee in these Chapter 11 Cases.

**BACKGROUND**

4. On March 29, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-

in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[4] No trustee or examiner has been appointed in the Chapter 11 Cases and no committee of unsecured creditors has yet been appointed.

5. A. Enterprises, LLC is the obligee on two outstanding promissory notes issued by the Debtors in the amount of $2.3 million and $3.2 million. Robert S. Abrams controls A. Enterprises, LLC, is the founder of SiO2, and is the current holder of 100% of the Debtors' common stock between his individually held shares and those held by A. Enterprises, LLC.

6. On the Petition Date, the Debtors filed the Motion, seeking approval of various procedures for a process to market substantially all of their Assets, in accordance with the Restructuring Support Agreement, which provides for an Equitization Restructuring in the form of a debt-for-equity swap with the Debtors' First Lien Term Lender and DIP Lender, affiliates of Oaktree Capital Management, L.P. ("Oaktree"). The Restructuring Support Agreement permits the Debtors to consummate an alternative sale Transaction, to theoretically be obtained through the Bidding Procedures proposed by the Motion. The proposed Bidding Procedures provide only a 60-day marketing process and set the "floor" for bids at $349.1 million, which is purportedly the "anticipated amount of Oaktree's Allowed DIP and First Lien Term Loan Claims." [Steffan Dec. ¶ 8]

7. The Debtors' description of the prepetition marketing process and efforts can most generously be described as vague. As set forth in the Steffan Declaration, Lazard was retained by the Debtors in "late 2022" to assist with a capital raise process. [Steffan Dec. ¶ 53]. Following its engagement, Lazard worked with the Capital Raise Committee to pursue an out-of-court solution. [*Id.*]. By "mid-March 2023" the discussions with Oaktree and Athos regarding

---

[4] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

an out-of-court financing or transaction broke down [*Id.* ¶ 55], following which the Capital Raise Committee tasked Lazard with expanding its efforts toward a more wide-spread marketing process [*Id.* ¶ 53].

8. In "Q1 2023" Lazard's scope of engagement was expanded to assist with investment banking in connection with, *inter alia*, a sale of the company. [*Id.* ¶ 54]. At some point before the Petition Date, Lazard developed a confidential information memorandum (the "Confidential Information Memorandum") and "began contacting potential buyers." [*Id.* ¶ 53]. As of the Petition Date, "the Debtors have approached *several* prospective purchasers ranging from sponsors with a related portfolio company and/or that specialize in complex situations." [Motion ¶ 3 (emphasis supplied)]. "Many of these prospective purchasers" have been sent confidentiality agreements, but it is unclear whether any of those confidentiality agreements have been executed, though the Debtors note discussions with "several" prospective purchasers are "ongoing." [*Id.*].

9. Notably, despite this purported prepetition marketing effort, Abrams was not contacted by Lazard with respect to a potential transaction, nor was he provided the Confidential Information Memorandum or a confidentiality agreement.

10. Only now that the Chapter 11 Cases have been filed, "Lazard intends to expand its marketing efforts to a fulsome list of potential buyers" and will speak to any party interested in a transaction, "within the confines of the bidding procedures." [Steffan Dec. ¶ 53].

II. **LIMITED OBJECTION**

11. Abrams does not object to a fair, open, and robust sale process that provides the Debtors an opportunity to maximize the value of their assets for the benefit of all stakeholders. But the sale process, as currently proposed, has been orchestrated by to acquire

ownership of a company valued in January 2022 at $1.3 billion in exchange for only $60 million in new money DIP financing and some unquantified Exit Financing.

12. The vague prepetition marketing process was insufficient to actually generate bids and interest in a transaction, and thus the "expedient" post-petition process sought by the Motion is inappropriate. In order to maximize value, at a minimum, the IOI Deadline and Bid Deadline should be extended by 30 days to provide no less than 90 days from the Petition Date to submit bids.

13. Moreover, the establishment of $349.1 million as the floor price for bidding requires further scrutiny. The outstanding principal amount of Oaktree's First Lien Term Loan is approximately $225 million, and the new money provided by the DIP financing is approximately $60 million (although it appears half of that may be more appropriately categorized as exit financing funded only in the last week of the DIP Budget). It appears the majority of the delta between these total principal loan amounts and the proposed floor price is a so-called "Prepayment Fee" (as defined in the Prepetition First Lien Term Loan Facility) of more than $43 million purportedly owed to Oaktree due to the filing of the bankruptcy petitions.

14. One of the primary purposes of the Bankruptcy Code is to maximize the value of a bankruptcy estate for the benefit of creditors. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (a debtor, as a fiduciary to the estate, has a duty to maximize the value of the estate). To further this purpose, sale procedures must seek to "facilitate an open and fair public sale designed to maximize value for the estate." *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); *see also In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-66 (8th Cir. 1997) (bankruptcy

courts are given discretion and latitude to facilitate a fair and open public sale focused on maximizing value).

15. Courts are not bound to merely defer to the Debtors' business judgment, and instead, with respect to matters of process under the Bankruptcy Code, should focus on the reasonableness and fairness of the proposed Bidding Procedures. *See In re American Safety Razor Co., LLC*, Case No. 10-12351 (MFW) (Bankr. D. Del. Sept. 30, 2010) Tr. at 132-33 ("I don't think, as the debtors suggest, that my consideration of bid procedures is based on the business judgment rule. I need not accept the debtors' business judgment with respect to process. The Bankruptcy Code and Rules and the process under the Bankruptcy Code are all matters . . . for the Court's determination as to what is fair and reasonable. In fact, I think that's my only role in this case; to determine what is fair for all the parties.").

16. The marketing process should be fairly apprised to maximize value for all of the Debtors' stakeholders, not just a single constituency. *See In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (prohibiting "convert[ing] the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender."); *see generally*, *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983) (reversing order authorizing section 363 sale of substantially all of a debtor's assets because if sale was approved there would be "little prospect or occasion for further reorganization.").

17. If no competing bid is generated by the Bidding Procedures, the Debtors will proceed with the Equitization Transaction, resulting in the conversion of Oaktree's debt to all of the Reorganized Debtors' new equity, with no recovery whatsoever for holders of junior secured debt, unsecured claims, or current equity interests. Oaktree—the only beneficiary of the Equitization Transaction—is the party that established the "process" in the Bidding Procedures.

6

18. Through the Motion, the Debtors seek approval of an accelerated marketing process that ends 60 days after the Petition Date. The Motion does not provide adequate support for the proposed timeline, and rather, simply asserts that the short timeline is needed, not to promote a meaningful sale process, but solely to comply with milestones in connection with the Restructuring Support Agreement.

19. The record before the Court with respect to the vague prepetition marketing process provides no basis for an expedited post-petition marketing process. The Motion and declarations fail to establish with any specificity when the marketing for a sale process began, how Lazard determined who to contact, how many parties were contacted, if any of those contacted parties executed confidentiality agreements, etc. The speed of the Debtors' proposed Bidding Procedures may achieve nothing other than expediently delivering the company to Oaktree—who appears to be the only beneficiary of this "process." The prepetition marketing process was not sufficiently robust so as to justify the proposed compressed sale timeline.

20. For a company of this size and value, the proposed 60-day period from the Petition Date to submit bids is insufficient for potentially interested parties to conduct due diligence and secure financing that may be necessary to pursue a value-maximizing transaction. The IOI Deadline and Bid Deadline should be extended by 30 days so that potential bidders have no less than 90 days from the Petition Date to submit competing bids for the Debtors' assets.

21. Moreover, the proposed $349.1 million floor price may be artificially high, and thus chill potential bidding. The Debtors should be required to quantify how they reach the proposed floor bid, including whether such amount includes the Prepayment Fee

purportedly owed in connection with the First Lien Term Loan that is nearly 20% of the principal amount of that loan.

### III.  RESERVATION OF RIGHTS

22. Abrams reserves the right to make such other and further objections as may be appropriate at the hearing.

### V.  CONCLUSION

23. WHEREFORE, Abrams respectfully requests that the Court grant relief consistent with the foregoing objection; and such other and further relief as may be just and proper under all of the circumstances.

Dated: April 13, 2023  
Wilmington, Delaware

Respectfully submitted,

/s/ Laurel D. Roglen
Matthew G. Summers, Esq. (No. 5533)
Laurel D. Roglen, Esquire (No 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  summersm@ballardspahr.com
         roglenl@ballardspahr.com

and

James P. Menton, Esq.
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 229-5813
Facsimile: (310) 229-5800
E-mail: jmenton@robinskaplan.com

*Counsel to A. Enterprises, LLC and Robert S. Abrams*