<pre>
 1                     UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 11
                                 .
 4   SIO2 MEDICAL PRODUCTS, INC.,.  Case No. 23-10366 (JTD)
     et al.,                     .
 5                               .  (Jointly Administered)
                                 .
 6                               .  Courtroom No. 5
                                 .  824 Market Street
 7              Debtors.         .  Wilmington, Delaware 19801
                                 .
 8                               .  Wednesday, April 26, 2023
     . . . . . . . . . . . . . . .  1:00 p.m.
 9
                        TRANSCRIPT OF OMNIBUS HEARING
10               BEFORE THE HONORABLE JOHN T. DORSEY
                    UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:           Justin Alberto, Esquire
13                              COLE SCHOTZ P.C.
                                500 Delaware Avenue, Suite 1410
14                              Wilmington, Delaware 19801

15                              Brian Schartz, Esquire
                                KIRKLAND & ELLIS LLP
16                              KIRKLAND & ELLIS INTERNATIONAL LLP
                                601 Lexington Avenue
17                              New York, NY 10022

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Brandon J. McCarthy

21   Transcription Company:    Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

1  APPEARANCES (CONTINUED):

2  For the Debtors:          Dan Latona, Esquire
                             KIRKLAND & ELLIS LLP
3                            KIRKLAND & ELLIS INTERNATIONAL LLP
                             300 North LaSalle Street
4                            Chicago, Illinois 60654

5  For the U.S. Trustee:     Linda Richenderfer, Esquire
                             OFFICE OF THE UNITED STATES TRUSTEE
6                            844 King Street, Suite 2207
                             Lockbox 35
7                            Wilmington, Delaware 19801

8  For Southern States
   Bank:                     Jeffrey Waxman, Esquire
9                            MORRIS JAMES LLP
                             500 Delaware Avenue, Suite 1500
10                           Wilmington, Delaware 19801

11 For the Committee:        Andrew O'Neill, Esquire
                             WHITE & CASE LLP
12                           111 South Wacker Drive
                             Suite 5100
13                           Chicago, Illinois 60606

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commence at 10:07 a.m.)

2       THE COURT: Good afternoon.  This is Judge Dorsey.

3  We are on the record in Si02 Medical Products, Inc., Case No.

4  23-10366.

5       I will go ahead and turn it over to debtors'

6  counsel to run the agenda.

7       MR. ALBERTO:  Good afternoon, Your Honor.  Justin

8  Alberto from Cole Schotz on behalf of the debtors.

9       Your Honor, I trust you have received a copy of the

10 amended agenda that we filed earlier today.

11      THE COURT:  Yes.  I did not receive -- I was told

12 there was going to be a revised DIP order, which I have not

13 seen.

14      MR. ALBERTO:  To clarify, Your Honor, we did file,

15 under certification, a revised DIP order.  And then, through

16 communications with the committee, we reached out to your

17 Chambers and ask that Your Honor hold off on entering that

18 DIP order pending review by the committee which I believe Mr.

19 Cavello acknowledged.  With that, perhaps my co-counsel, Mr.

20 Schartz, from Kirkland & Ellis, can provide a little more

21 detail.

22      THE COURT:  All right.

23      MR. SCHARTZ:  Hi, Judge.  Brian Schartz, Kirkland &

24 Ellis, proposed counsel to the debtors.

25      We have one small change to the DIP order that we

 1   hopefully will get on file here pretty quickly.  It's a

 2   pretty unextraordinary change, but we do want to get it in

 3   there.  We can either talk about it when we get there in a

 4   second or we can file it under COC right after the hearing,

 5   but it should not be extraordinary.

 6            THE COURT:  All right.  Well, why don't we go

 7   forward. You can tell me what the change is and I will wait

 8   for it to be submitted under COC.

 9            MR. ALBERTO:  It is Docket Item No. 210 where we

10   filed the certification of counsel with a revised DIP order

11   underneath.  I am happy to email that to your Chambers if you

12   don't have it in front of you.

13            THE COURT:  Yes, please do.

14            MR. ALBERTO:  We can do that.

15            MR. SCHARTZ:  Thanks again for having us.  This is

16   Brian Schartz for the record of Kirkland & Ellis on behalf of

17   the debtors.

18            I did want to, sort of, give you a quick update on

19   where we are at in the case.  Its been a pretty busy few

20   days, as I'm sure you have seen on the docket.  We really do

21   appreciate all you have done to get orders entered and on

22   file as they have come through. I think, as we sit here

23   today, we have accomplished a lot through COC.  The only

24   thing left open is the DIP.

25            I want to just take a moment to take stock on the

1  record of where we're at, where we think we're going as we

2  head into May and give Your Honor an opportunity to ask any

3  questions and let anyone else be heard if they have anything

4  they want to say on the record about the process.

5          So, it's been almost 30 days since the first day

6  hearing and it's been a very busy few weeks, Your Honor.  On

7  April 13th the U.S. Trustee appointed the official committee

8  of unsecured creditors.  That committee, very quickly,

9  retained White & Case, Potter Anderson as counsel, and

10  Province as financial advisor.  The committee, suffice to

11  say, you know, hit the ground running.

12          We adjourned today's hearing from last week to this

13  week to allow them to give -- to give them an opportunity to

14  dig into the motions, the case overall, and we did our best,

15  on the debtors' side, to respond as quickly as possible.  We

16  all worked to dual track this.  Today had the potential to be

17  a contested hearing.  Objections were filed late on Friday.

18  And discovery was happening over the weekend on a rolling

19  basis.

20          We worked closely with the committee, with our DIP

21  lender and plan sponsor at Oaktree and through their counsel,

22  Sullivan & Cromwell, to reach the resolution that we have

23  today on a whole host of issues.  And while we haven't, you

24  know, agreed or seen the case at every point along the way, I

25  will say, you know, we have reached a huge amount of

1  consensus today. I think it's been a good working

2  relationship with the committee, and its advisors, and

3  Oaktree. We hope to maintain that constructive relationship

4  throughout the cases.

5        There were other objections filed, one by Mr. Bobby

6  Abrams, the company's founder and former chairman to the

7  process.  We were able to resolve those as well with the

8  agreements that we reached with the committee.  There was

9  also some objection from the U.S. Trustee to the bid

10  procedures that we also were able to resolve.  So, the whole

11  process, I think, has been working out very well.

12        So far, we have complied with the committee's

13  request for production of documents.  By my count, as of this

14  morning, we have supplied about 400 files, just under 10,000

15  pages so far.  We are going to continue to do what we can to

16  satisfy their requests.  There was a deposition of Mr. Cowan

17  of Lazard that happened on Monday in advance of this hearing.

18  We were set to have another deposition of Mr. Seth Bullock of

19  A&M yesterday, but ultimately, we canceled that as peace

20  broke out on the last few remaining disputed issues with the

21  committee.

22        We also are working to conduct our own

23  investigation on the debtors' side and we plan to coordinate

24  both Oaktree and the committee on that.  The capital raise

25  committee, which, as I mentioned at the first day hearing,

1  includes four independent and disinterested members and the

2  CEO, continue to look and investigate all potential claims

3  and causes of action.  That includes potential claims and

4  causes of actions against Mr. Abrams associated for a whole

5  host of things.

6          Looking ahead, we have filed a 2004 motion that is

7  set to be heard on May 16th as it relates to ongoing

8  discovery requests of Mr. Abrams.  So, that is just something

9  to preview, nothing up for today.  We expect to coordinate

10  with the UCC's advisors as much as we can so that we can keep

11  costs low and keep this process as efficient as possible.

12          On the marketing process we started this case with

13  the goal of effectuating a sale process while were in Chapter

14  11.  Just to refresh your recollection we have a plan on

15  file, it's a debt for equity plan, where (indiscernible) one

16  hundred of the equity, but we're also marketing the business

17  through the case and that is what was approved in the bid

18  procedures order.

19          One of the key points that we addressed in our

20  negotiations and discussions with the committee is that the

21  timeline has now been kicked out.  So, the initial indication

22  of interest deadline is now May 12th at 4 p.m. Eastern.  The

23  bid deadline is June 12th at 4 p.m. Eastern.  And we are

24  going to select qualified bids by June 14th.  And if we have

25  qualified bids, we will have an auction on June 15th; all

1  working towards a sale or confirmation hearing by June 22nd.

2          The case has tight liquidity.  That was the most we

3  could squeeze out of the DIP budget, but that was where we

4  ended in our negotiations around additional time.  I wanted

5  you to be aware of it.

6          As the marketing process has played out, you know,

7  debtors have done all they really can to reach out to a broad

8  universe of potentially interested parties.  Today its just

9  over 100 financial and strategic partners have been put in

10  contact with Lazard and the company.  The debtors have

11  executed confidentiality agreements with about 30 of those

12  parties.

13          We are hopeful that, you know, we are going to get

14  some level of interest at the May 12th deadline as it comes

15  up in the next few weeks.  The company's management and

16  advisors have scheduled or given comprehensive management

17  presentations right now to 12 parties and several parties

18  have conducted site visits.

19          So, this is very busy behind the scenes in terms of

20  the marketing process.  We are hopeful that that is going to

21  come to a productive resolution.

22          Any questions, Your Honor?

23          THE COURT:  Not so far.  Thank you.

24          MR. SCHARTZ:  Like I mentioned, there were a couple

25  changes to the timeline that I just read into the record.

1  The other change to the bid procedures is we clarified a

2  couple important points.  Just so you are aware of them:

3          Number one, really this could be for the assets of

4  the company, it could be for the equity of the company.

5  Really we are open to hearing whatever it is that someone

6  wants to submit.  The floor bid was an issue in the

7  objections.  We have clarified in the process letter and the

8  bid procedures we will take any bid.  While we want to look

9  at the bids, we want to see what it is, we want to make a

10 decision, so we have clarified those points. I think those

11 were important points that the committee raised.  We have

12 done our best to address them with the consent of Oaktree as

13 well.

14         Overall, without sounding too self-serving, I do

15 think the cases are on solid footing as we stand here today

16 from a liquidity and process perspective.  And I am extremely

17 pleased that, you know, we were able to avoid a contested

18 hearing today.

19         Looking ahead we expect to file our SOFAs and

20 scheduled, hopefully, today before midnight.  We are not

21 going to extend that deadline.  We wanted to get those on

22 file as quickly as possible.  And for the May 16th hearing we

23 have the 2004 motion, as I mentioned, the disclosure

24 statement is also up.

25         On the cash management motion there was a 345 issue

1  that the U.S. Trustee and raised at the first day hearing.

2  We have moved that from today to the May 16th hearing.  Our

3  hope is that that will actually be resolved by then and we

4  will have the bank situation to sort it out.  Then there is a

5  dispute with the U.S. Trustee around sealing a portion of the

6  creditor matrix.  That is fully briefed.  We didn't want to

7  take up time today.  So, with the U.S. Trustee's consent that

8  has been adjourned to May 16th as well.

9           That is the sum and substance of the update.

10  Again, we do appreciate everything you and Chambers have done

11  to accommodate us.  I know we filed a whole host of papers. I

12  will let other people talk and then on the DIP I am going to

13  let my partner, Dan Latona, take the podium when we get

14  there.

15           THE COURT:  All right.  Let me go ahead and hear

16  from Ms. Richenderfer and then I will go to the committee.

17           MS. RICHENDERFER:  Thank you, Your Honor.  Good

18  afternoon.  Linda Richenderfer on behalf of the Office of the

19  United States Trustee.

20           Your Honor, as counsel just mentioned, the U.S.

21  Trustees Office did agree to push off the status on the cash

22  management order, but since we're here today I might as well

23  give you a little bit of an update so you know how things are

24  going through.

25           There are three banks that the debtor uses:

1       One was already a bank that had a UDA with my

2   office.  So, that has not been an issue.

3       The second bank, Southern, as I understand it, the

4   debtor generally holds about $2,000 or less in those bank

5   accounts and its somehow related to the relationship under

6   which Southern became a secured creditor of the debtor

7   because, I think, it has a security interest in some

8   equipment; something of that nature.  What we will do is

9   hopefully we will be able to agree upon language for a final

10  cash management order that will make it clear that any funds

11  held at Southern will be below the FDIC insured amount; far

12  below the FDIC insured amount.

13      That left us with the third bank and I can report

14  that there have been a lot of emails exchanged.  The UDA

15  agreement appears to be something new to the people at the

16  bank. I think its Rezinant [ph], I'm probably not saying that

17  correctly.  But the person in my office who handles the

18  uniform depository agreements has been in touch with people

19  there. Alvarez & Marsal has been involved in this process for

20  the debtor.  Debtors' counsel has been involved.  And as late

21  as half an hour ago there were emails going back and forth.

22      I think that there is some confusion about what

23  information the bank needs to provide first and what

24  information the U.S. Trustee needs to provide to them.  We

25  are working on that.  The 30 days runs on Monday, May 1st.  I

1  am very, very hopeful that we will have a signed UDA with

2  this bank by Monday, May 1st based on the communications that

3  I have been seeing.  Of course, there is no guarantee until

4  something is signed, but I will say that there has been more

5  then a good faith effort made by both the people in my office

6  that deal with this and the people at the bank.  And Alvarez

7  & Marsal has been assisting to get this agreement signed

8  within the 30-day period.

9            THE COURT:  Okay.

10           MR. SCHARTZ:  Its Renasant Bank and we take your

11 concerns, Ms. Richenderfer, very serious.  So, hopefully, we

12 can get that across the line.

13           THE COURT:  Thank you.

14           Anything else, Ms. Richenderfer?

15           MS. RICHENDERFER:  Your Honor, I guess the only

16 other thing is that, you know, my office did file an

17 objection to the bid procedures motion.  It was resolved

18 through the changes that were made in response to the motion

19 and the negotiations that occurred between the debtor, and

20 Oaktree, and also the committee because the committee raised

21 similar concerns to those that were raised by the United

22 States Trustees Office --

23           THE COURT:  Okay.

24           MS. RICHENDERFER:  -- such as the timetable for the

25 marketing process and who participated as a consulting party

1  in the bid procedures, and whether or not the full 75-day

2  challenge period would be available for the committee.  And

3  the negotiations that the committee undertook resulted in

4  agreements that address those issues amongst, in addition to,

5  those that the committee had on top of those.

6          THE COURT:  Okay.  What about the creditor matrix

7  issue.  Is that going to be resolved before the 16th?

8          MS. RICHENDERFER:  Your Honor, I don't think it

9  will be resolved. I have provided to debtors' counsel a copy

10  of the transcript from the hearing in which Judge Owens

11  agreed with the position of the U.S. Trustees Office and

12  ordered the debtor in FB Debt to un-redact the names of

13  individuals in the UK and the European Union.

14          I understand from debtors that it's an issue that

15  they want to, I guess, readdress with Your Honor.  I have not

16  seen a reply yet from them.  I'm sure they will be filing

17  one.  And it looks like we may, unfortunately, have to take

18  up Your Honor's time with that on the 16th.

19          THE COURT:  Okay.

20          MS. RICHENDERFER:  I don't what else I could

21  provide at this point, Your Honor, because I think Judge

22  Owens ruling goes through her analysis which is the analysis

23  that we used.  It's also set forth in our objection to the

24  redaction of the names.

25          MR. SCHARTZ:  Your Honor, Brian Schartz.  We are a

1  little bit stuck between a rock and a hard spot on this

2  because we are complying with non-US regulations or we're

3  subject to non-US regulations or potentially subjected to

4  non-US regulations where if we don't challenge it and we

5  don't have (indiscernible) saying we have to do it we could

6  be open to liability in another jurisdiction.  So, that is,

7  kind of, point one.

8         Point two is, you know, we have read the U.S.

9  Trustees pleading.  We have read Judge Owens decision.  We

10  have briefed the reply.  We will send that over and make sure

11  the U.S. Trustee has seen it.  We have a different view.  So,

12  we would like to talk about that and, unfortunately, I hate

13  binary issues in bankruptcy, but this just may be one of

14  those and we will try and do it as quickly and efficiently in

15  front of Your Honor as possible.

16         THE COURT:  Well, it's going to be tight.  The

17  hearing on the 16th isn't until 3 p.m.  I have got four other

18  hearings that day before yours.  To the extent it's going to

19  be an evidentiary hearing I don't know if we will have enough

20  time on the 16th.  So, keep that in mind on scheduling.  It

21  may need to get pushed to another date.

22         MR. SCHARTZ:  We understand.

23         THE COURT:  Okay.

24         MR. SCHARTZ:  Thank you.

25         THE COURT:  Thank you.

1          Ms. Richenderfer, anything else?

2          MS. RICHENDERFER:  No, Your Honor.  I am not quite

3   clear whether or not the debtor has already filed the reply,

4   but I can deal with them about that later because we didn't

5   agree until yesterday to move the motion or the objection, I

6   should say, until the 16th.  So, I'm not sure whether or not

7   the reply has been filed, but I will take it under

8   consideration and raise whatever issues are there with my

9   client.

10          I will tell you from the perspective of the United

11  States Trustee we will not be presenting any evidence.  We

12  think that it's a legal issue.  We also think the burden is

13  on the debtor.

14          THE COURT:  All right.  Thank you.

15          Mr. O'Neill, you want to speak on behalf of the

16  committee?

17          MR. O'NEILL:  I would.  Your Honor, can you hear me

18  okay?

19          THE COURT:  Not really.

20          MR. O'NEILL:  How about now?

21          THE COURT:  Your still rather muffled.

22          MR. O'NEILL:  I am going to manipulate my computer

23  here to get the microphone close to my mouth.

24          THE COURT:  Now you are completely breaking up.  I

25  can't hear you.  I am only getting about every third word.

1        MR. O'NEILL:  Maybe I was going the wrong way.  How

2  about this?

3        THE COURT:  There you go.  That's better.

4        MR. O'NEILL:  Okay.  Well if I look a little funny

5  in the camera I apologize.  I'm working with the best I can.

6  I will say, I was at the airport yesterday on my way up to

7  Philadelphia and when the news came down that the hearing was

8  canceled. So, I know the Brandywine is very lovely this time

9  of year, so we're missing your courtroom, but this is

10  definitely better from an efficiency standpoint.

11        You know, with that Andrew O'Neill, White & Case,

12  we're the proposed counsel for the committee.  My colleague,

13  Mr. Schartz, stole a little bit of my thunder, but I would

14  like to give a little bit of background on the committee, who

15  we are, and kind of, you know, what we are seeing

16  (indiscernible) case.

17        You know, for starters, just to kick off, we have

18  been move extraordinarily quickly.  (Indiscernible) these

19  days, but the committee was appointed on the (inaudible).  As

20  Mr. Schartz noted, White & Case --

21        THE COURT:  You're breaking up again, Mr. O'Neill.

22        MR. O'NEILL:  How about now?

23        THE COURT:  Yeah.

24        MR. O'NEILL:  Better.  As Mr. Schartz noted, we

25  were appointed on the 13th, as was the committee appointed.

1  And then we did interviews on the 14th and Province was

2  selected as the financial advisor for the committee on the

3  14th.  The committee is comprised of vendors to the debtors.

4  R&D Custom Automation, DPF Group [ph], Sprint Corp., Tixon

5  Engineering [ph], and Grantek Systems Integration Corp.  We

6  have been having meetings with the committee regularly and I

7  believe some, if not all, are listening in on this hearing

8  and are very engaged in the process.

9        So, Your Honor, what we have been doing and you can

10  well imagine getting up to speed as quickly as possible when

11  we were appointed, you might remember, there was an objection

12  deadline on the 14th for this hearing which was supposed to

13  be last week.  So, we immediately engaged with the debtors

14  and they were helpful in working to move this hearing and the

15  objection deadline.

16        We continued talking to the debtors' advisors

17  through the weekend.  A&M, and Lazard, and Kirkland were all

18  available to help get us up to speed with this matter. And,

19  of course, we (indiscernible) DIP and the bidding procedures

20  right away.

21        Coming in we, obviously, have concerns about the

22  case and the trajectory of the case with unsecured creditors

23  slated to get a zero percent recovery.  You know, I'd say we

24  (indiscernible) two areas.  The obvious ones, kind of,

25  maximizing the sale process and what the estates might

1 receive through that process.  Then thinking about an

2 investigation and what causes of action (indiscernible).

3         As Your Honor knows, there was a significant amount

4 of investment into this company; over a billion dollars in

5 various forms of equity, and debt, and government financing.

6 Now the company is eventually slated to be sold for $225

7 million (indiscernible), $60 million (indiscernible).

8         We have been happily engaged, rolled up our sleeve,

9 we got involved on those (indiscernible).  We did file

10 objections on Friday.  We had some (indiscernible) bid

11 procedures, primarily, as Mr. Schartz noted, around the

12 length of the process and also the fact that the process, at

13 least as one would read the bid procedures, would propose

14 selling the new common stock of the reorganized debtor rather

15 then allowing bidders to come in and bid (indiscernible)

16 assets for (indiscernible) --

17         THE COURT:  You're breaking up again, Mr. O'Neill.

18         MR. O'NEILL:  Okay.  I'm trying to stay as close to

19 this microphone without having the corner of my head in the

20 camera.  Maybe that is a lost cause.  I will focus on --

21         THE COURT:  Well, you may want to -- for future

22 reference, having now dealt with these Zoom hearings for a

23 couple of years now or more, sometimes it works better if

24 your computer microphone does not pickup well you can also

25 dial-in by telephone, use the Zoom just for video, and use

1   your phone for audio.

2          MR. O'NEILL:  Yeah, that is usually what I do.  I

3   dialed in for the last-minute hearing to do that.  I

4   apologize to the Court.

5          I -- because I'm not getting a lot of good feed I

6   will just come to the crux of the thing.  We are pleased that

7   the process is (indiscernible).  And we are looking forward

8   to working with the debtors to maximize value in that

9   process.  We are also pleased that bidders can now bid on

10  assets in addition to the (indiscernible).

11         Also, some changes to the DIP were made which were

12  critical in allowing the committee to pursue its

13  investigation which, you know, we have an obligation and a

14  fiduciary duty to look into the liens, look into what causes

15  of action the estate may have, and we plan to do that

16  vigorously.

17         Going forward, obviously, the DIP hearing is going

18  to be upon us in only a couple of short weeks' time.  So, we

19  plan to engage extensively with the debtors on what the plan

20  will ultimately look like and talk about the causes of action

21  among other things.

22         We have also been partnering with the debtors at

23  this point on the investigation.  We believe the committee

24  has its own independent obligations to do an investigation,

25  but we think there are ways that we can work together and do

1  that in an efficient time.

2          So, with that, Your Honor, I will thank you.  Sorry

3  for the difficulties.  I will leave it there unless Your

4  Honor has (indiscernible).

5          THE COURT:  No.  Thank you, Mr. O'Neill.  I think I

6  got most of what you were saying.

7          MR. O'NEILL:  All right.  Thanks very much.

8          THE COURT:  Anyone else wish to be heard?

9      (No verbal response)

10          THE COURT:  Mr. Schartz.

11          MR. SCHARTZ:  Okay.  I am going to pass the virtual

12  podium here, in my office, to Mr. Latona to talk about just

13  one quick change in the DIP and answer any questions you may

14  have.

15          THE COURT:  All right.

16          MR. ALBERTO:  Your Honor, while Mr. Latona is

17  taking the virtual podium we did correspond with Mr. Cavello

18  during this hearing.  We sent him a copy of the DIP order

19  that had been filed and confirmed for him that the changes

20  that Mr. Latona is about to go through we will file an

21  additional COC after this hearing.

22          THE COURT:  I have it.  Thank you.

23          MR. LATONA:  Great.  Your Honor, for the record,

24  Dan Latona of Kirkland & Ellis on behalf of the debtors.

25          Like Mr. Schartz and Mr. O'Neill said, the debtors,

1   the committee, and the DIP lenders worked very hard over the

2   course of the past couple of days to resolve all the issues

3   on the bidding procedures and on the DIP.  The debtors made a

4   number of changes to provide adequate protection to two

5   secured lenders, Southern States and Renasant, in addition to

6   working with the committee to address its changes.

7          So, Your Honor, one minor revision that we have

8   already started socializing with the parties is to add a

9   reservation of rights in Paragraph 10(b) that provides that

10  property acquired after the petition date also constitutes

11  prepetition Renasant collateral.  The parties are going to

12  reserve all of their rights to challenge whether any

13  collateral does constitute or after acquired property does

14  constitute prepetition Renasant collateral.  We decided that

15  instead of fighting about it at this time we would push it to

16  a later date.  So, we intend to file a revised DIP order in

17  the very near term under COC.

18          THE COURT:  All right.

19          MR. SCHARTZ:  One other clarification for the

20  record, Your Honor, in Paragraph 11(c) there is a provision

21  that provides Southern States adequate protection for current

22  interest payments and also legal fees.  To the extent that

23  Southern States wishes to seek more in legal fees they are

24  permitted to do so, but clarifying for the record that they

25  will file a motion to seek further fees and not simply

1  request from the debtors or the DIP lenders.

2         So, unless Your Honor has any questions the debtors

3  will submit a revised order under COC.

4         THE COURT:  Okay.  No, that's fine.  I see those

5  two changes.  All right.  That's fine.  Thank you.

6         Mr. Waxman.

7         MR. WAXMAN:  Good afternoon, Your Honor.  Jeff

8  Waxman of Morris James on behalf of Southern States Bank.

9  With me today is my colleague, Tara Pakrouh.

10        THE COURT:  You are having the same problem with

11 your microphone, Mr. Waxman.  You are breaking up.

12        MR. WAXMAN:  I'm sorry.  Can you hear me, Your

13 Honor?

14        THE COURT:  Now I can.

15        MR. WAXMAN:  I will do my best to hold my camera

16 steady so that it's closer.  I apologize.

17        Southern States is the senior secured creditor on

18 the debtors' equipment and inventory as a claim of

19 approximately $31.4 million.  After significant back and

20 forth, Your Honor, Southern States has reached a resolution

21 with the debtors which provides Southern States with adequate

22 protection.

23        Southern States wants to be clear, Your Honor,

24 based on the trajectory of the case Southern States agreed to

25 a relatively modest amount for its legal fees and expenses

1 through the case with the expectation and understanding that

2 either the assets would be sold and Southern States would be

3 paid in full or its claim would be unimpaired under a plan.

4 This is without prejudice to seeking additional adequate

5 protection if needed or receive payment of such fees as

6 permitted under Section 506(b) and the underlying loan

7 agreements which does provide for allowance of legal fees and

8 expenses.

9            Southern States understands the creditor

10 committee's request for any request for additional adequate

11 protection that may be filed through a motion after an

12 opportunity for hearing.  We absolutely have no problem with

13 that, Your Honor.

14            Southern States would remind everybody, however,

15 that Southern States request for adequate protection was

16 based upon the expected trajectory of the case and it really

17 does not intend to be active in this case unless its rights

18 are being adversely affected.  So, ultimately, the need for

19 Southern States to come and request additional adequate

20 protection is largely dependent upon the actions taken by the

21 debtors and creditors committee with respect to Southern

22 States.

23             With that, Your Honor, Southern States does agree

24 with the form of order.  It has no further comments. It has

25 seen the comment that was just recently circulated by the

1  debtor and does not oppose that.  We look forward to a prompt

2  process resolving all of the issues with respect to Southern

3  States.

4          THE COURT:  Okay.  Thank you, Mr. Waxman.

5          MR. WAXMAN:  Thank you, Your Honor.

6          THE COURT:  Anyone else wish to be heard?

7      (No verbal response)

8          THE COURT:  All right.  Mr. Latona, anything

9  further?

10         MR. LATONA:  No.  Unless Your Honor has any further

11 questions, that concludes today's agenda.  We will see you on

12 May 16th.

13         THE COURT:  All right.  Thank you very much.  I

14 will look forward to the COC.  We will get that entered.  I

15 didn't have any other issues with the proposed form of order.

16 So, as soon as we get that we will be able to get it entered

17 for you.

18         MR. LATONA:  Thank you, Your Honor.

19         THE COURT:  Thank you.  We're adjourned.

20     (Proceedings concluded at 1:34 p.m.)

21

22

23

24

25

1                              CERTIFICATION

2          I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ Mary Zajaczkowski                    April 26, 2023

8    Mary Zajaczkowski, CET-531

9    Certified Court Transcriptionist

10   For Reliable