## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SIO2 MEDICAL PRODUCTS, INC, *et al.*[1],<br><br><br><br>                              Debtors. | Chapter 11<br><br>Case No. 23-10366 (JTD)<br><br>(Jointly Administered)<br><br>Re: D.I. 19 & 45 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE STATEMENT AND RELATED SOLICITATION PROCEDURES**

Andrew R. Vara, the United States Trustee for Region 3 ("U. S. Trustee"), through his counsel, files this Objection (the "Objection") to the *Debtors' Motion for Approval of Disclosure Statement and Related Solicitation Procedures (*the "Motion"), and in support of his Objection, states as follows:

### PRELIMINARY STATEMENT

1.    The Debtors' proposed Disclosure Statement should not be approved because it fails to provide adequate and accurate disclosures and because the Debtors' Plan is patently unconfirmable.   The Debtors are unable to meet these statutory requirements because they themselves do not know at this early juncture in these cases what will occur with respect to the estates' assets.  Bids are not due until *aft*er the Disclosure Statement hearing and *after* the proposed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SiO2 Medical Products, Inc. (8467); Advanced Bioscience Labware, Inc. (1229); and Advanced Bioscience Consumables, Inc. (2510). The location of the Debtors' principal place of business and service address in these chapter 11 cases is 2250 Riley Street, Auburn, Alabama 36832.

Plan vote deadline.  Investigations into possible causes of action and possible challenges to at least portions of secured lender claims are still in their infancy.  These events may have a significant impact on creditor recoveries, and they are not adequately explained in the Disclosure Statement..

2.      The proposed Plan is also patently unconfirmable due to the scope of the third-party releases, the Debtor Releases and the parties receiving exculpation.  The Plan imposes non-consensual third-party releases ("Third-Party Releases") on numerous non-debtor parties, and a related-parties clause expands the universe of those who will be stripped of their claims against non-debtors by way of a labyrinth of terms and definitions.  The Disclosure Statement fails to provide adequate information as to who is giving Third-Party Releases, who will receive such releases, and what claims are being released.  There is also a myriad of parties being forced to grant Third-Party Releases through application of the related-parties clause, the vast majority of whom will not even receive an opt out form, or notice, because they are not creditors or equity holders of the Debtors.  They include, by way of example, all current and former employees of all creditors who are Releasing Parties, and all current and former employees of all *affiliates* of all creditors who are Releasing Parties.  The opt-out mechanism in this case provides nothing but an illusion of consent, and there is no basis in this case for the approval of such non-consensual third-party releases under the Bankruptcy Code.

3.      For these reasons, set forth in more detail below, neither the Disclosure Statement nor the Debtors' proposed Solicitation Procedures should be approved, and the Motion should be denied.

## **JURISDICTION, VENUE, AND STANDING**

4.      This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. §
1334.  Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

5.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative
oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the
"Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce
the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee*
*v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994)
(noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere
pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500
(6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

6.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard
to this Objection.

## **FACTUAL BACKGROUND**

7.      The above-captioned Debtors filed voluntary petitions for relief under chapter 11
of the Bankruptcy Code in this Court on March 29, 2023 (the "Petition Date").  On that same day
Debtors filed their *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of SiO2*
*Medical Products, Inc., and Its Debtor Affiliates* (the "Disclosure Statement") and Plan, attached
to which was a Restructuring Support Agreement Between the Debtors and Prepetition/DIP Lender
Oaktree (the "RSA").[2]  Debtors have not sought Court approval of the RSA.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in
the Disclosure Statement.

8.     The *Motion of Debtors for Entry of an Order (I) Establishing Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 17] (the "Bidding Procedures Motion") was also filed on the Petition Date.

9.     On April 13, 2023, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

10.     Since the Petition Date, changes were made to the bidding procedures and the sale process was extended by two weeks.  Bids are now not due until June 12, 2023, well after the Disclosure Statement Hearing and the date proposed by Debtors as the vote and plan objection deadlines.

11.     In addition, certain case milestones have been extended and the Committee's challenge period was extended until 75 days after entry of the Interim DIP Order.  The Debtors and the Committee are investigating possible causes of action that may be brought on behalf of the Debtors' estates.  (*See Stipulation Regarding Examiner Motion,* D.I. 253).  An interview with former CEO and Chairman Robert S. Abrams is set for May 18, 2023.  (*Id.*).

## LEGAL ARGUMENT

### A.  Debtors have not met the Disclosure Requirements of Bankruptcy Code Section 1125

12.     The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated."  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).  "Adequate information" under section 1125 is "determined by the facts and circumstances of each case."  *See Oneida*, 848 F.2d

at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).  The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan.  *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988).  Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions.  The disclosure requirement of section 1125 is one of those provisions.  *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

13.    The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, *that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan* . . . .

11 U.S.C. § 1125(a)(1) (emphasis added); *see Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994*); Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 54 (S.D.N.Y. 1999).

14.    To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan.  *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").  Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives ...."  *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

15.     Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less.  *See In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors.  *See In re Adelphia Commc'ns Corp.,* 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove* 860 F.2d at 100).

16.     Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate, and its inclusion is not misleading.  *See Adelphia*, 352 B.R. at 596.  The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan.   *See In re Duratech Indus.,* 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999).  The disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene.  *See In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

17.     Here the Disclosure Statement lacks adequate information on important issues.  Oaktree has the right to exercise a "Toggle Trigger" and pivot away from the proposed Plan, even after solicitation has started.  Insufficient information is disclosed regarding potentially significant causes of action against both former and current officers and directors.  Mere references to investigations do not provide sufficient information upon which a creditor may make an informed decision to vote for or against the Plan.

18.     The Disclosure Statement also does not provide sufficient information on potential claims related to Operation Warp Speed.  The undisclosed value may end up with the owner of the Reorganized Debtors as opposed to being used as a basis for greater creditor recoveries.  Again, this is important information for a voting creditor to consider.

19.     In addition, the Disclosure Statement fails to provide adequate information as to who will be deemed to give third party releases, who will receive such releases, and what claims are being released.

### B. The Plan is Patently Unconfirmable

20.     If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *See In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) *(citing In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.) *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)). As demonstrated below, the Plan is patently unconfirmable, and therefore the Disclosure Statement cannot be approved.

21.     The Third-Party Releases in the Plan, which benefit numerous non-debtors, will be given not only by those creditors and interest holders who vote to accept the Plan, or who are deemed to accept the Plan, but by all "Holders of Interests" and all "Holders of Claims" unless they elect to opt out or file a timely objection. The Third-Party Releases also will be imposed on the Related Releasing Parties, without the ability for them even to opt-out, and in most instances without having received notice.

22.     In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third- party release is permissible. The Court acknowledged that several Circuits do not allow such non-consensual releases under any circumstances. *See id.* at 212. Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases," such as mass tort cases. *See id.* at 212 (citing *Securities and Exchange Commission v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 293 (2d Cir. 1992); Kane v.*

*Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 640, 649 (2d Cir. 1988)); see also In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141 (2d Cir. 2005) (third-party release may be granted "only in rare cases").*

23.     The Third Circuit in *Continental Airlines* ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against debtors' directors and officers, did "not pass muster under even the most flexible test for the validity of non-debtor releases." *Continental*, 203 F.3d at 214.   Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214 n. 11 (emphasis added). However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

24.     The Third Circuit Court of Appeals recently referenced *Continental* in *In re Millennium Lab Holdings II, LLC*., 945 F.3d 126 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings*, 19-1152, 2020 WL 2621797 (U.S. May 26, 2020), as one of the precedents, along with *In re Global Indus. Techs., Inc*., 645 F.3d 201, 206 (3d Cir. 2011), regarding nonconsensual third-party releases.   The Third Circuit indicated that these decisions "set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted."   945 F.3d at 139 (emphasis added).

25.     In the current case, there is nothing in the record to indicate the presence of "extraordinary circumstances," or that the high threshold necessary for approval of non-consensual third-party releases has been met with respect to each of the non-debtor parties that would be the recipients of these non-consensual releases.   Moreover, the releases being imposed on the Related

8

Parties do not meet the fairness requirement of *Continental* because the Related Parties will receive no distribution under the Plan, or any other consideration in exchange for such releases. Thus, both the "fairness" and "necessity" elements specified in *Continental* are absent here.

26.     For the reasons set forth above, and those set forth in the *Official Committee of Unsecured Creditors' Objection and Reservation of Rights to Disclosure Statement for Debtors' Joint Plan of Reorganization and Related Solicitation Procedures* (D.I. 261), the Disclosure Statement should not be approved, and the Motion should be denied.

## **CONCLUSION**

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the relief requested by Debtors' Motion and grant any such other and further relief that the Court deems just and proper.

Dated: May 10, 2023
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By:  /s/ *Linda Richenderfer*
       Linda Richenderfer (DE 4138)
       Trial Attorney
       United States Department of Justice
       Office of the United States Trustee
       J. Caleb Boggs Federal Building
       844 King Street, Suite 2207, Lockbox35
       Wilmington, Delaware 19801
       Phone: (302) 573-6492
       Fax:    (302) 573-6497
Email: linda.richenderfer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Linda Richenderfer, hereby certify that I served copies of the *United States Trustee's Objection to Debtors' Motion for Approval of Disclosure Statement and Related Solicitation Procedures Objection* through the CM/ECF notification system and by email on May 10, 2023.


*s/Linda Richenderfer*

Linda Richenderfer