## Exhibit A

**Settlement Term Sheet**

*Execution Version*

## SiO2 Medical Products, Inc. Chapter 11

## Settlement Term Sheet[1]

**Committee Agrees:**

1. Plan Releases/Exculpation:

    a.  Full releases of all current officers of the Debtors and current and former directors of the Debtors who are or were (i) members of the Capital Raise Committee, (ii) appointed by Athos KG and/or any of its controlled subsidiaries, affiliates, or related individuals (including any current or former directors on the Debtors' board of directors appointed or designated by Athos) (collectively, "**Athos**"),[2] (iii) appointed by Oaktree Capital Management, L.P. and/or any of its affiliates or funds (including any current or former directors on the Debtors' board of directors appointed or designated by Oaktree) (collectively, "**Oaktree**"), (iv) appointed by the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama, (v) appointed by JMC Glass, LLC, (vi) appointed by any customer of the Debtor, and (vii) not a Non-Released Director,[3] in each case, solely in their capacities as such;

    b.  Full releases of Oaktree (including, for the avoidance of doubt, all Related Parties of Oaktree, including all current and former directors of the Debtors who are or were appointed by Oaktree); agreement to not further investigate or challenge DIP or First Lien Term Loan Claims or any other Claims and/or Interests, in each case, held by Oaktree, including without limitation, the "make-whole" due under the First Lien Credit Agreement;

    c.  Full releases of Athos (including, for the avoidance of doubt, all Related Parties of Athos, including all current and former directors of the Debtors who are or were appointed by Athos); agreement to not further investigate or challenge the Second Lien Term Loan Claims or any other Claims and/or Interests, in each case, held by Athos, including without limitation, the Athos Subordinated Claims (as defined herein);

---

[1] The compromises and settlements (the "**Settlement**") provided herein (the "**Settlement Term Sheet**") apply in the context of the Plan and are subject to:  (a) Oaktree's rights to toggle from an Equitization Restructuring to a sale pursuant to section 363 of the Bankruptcy Code and (b) the parties' respective rights provided under the DIP Facility and the DIP Orders; *provided, however*, that if Oaktree exercises such toggle right, (x) this Settlement Term Sheet shall be terminated and the Committee shall not be bound by its terms and (y) the Committee shall have 30 days from the date of the notice of Oaktree's exercise of such toggle right to commence a challenge pursuant to paragraph 16 of the Final DIP Order.

[2] Capitalized terms used but not defined herein shall have such meaning ascribed to them in the *Joint Chapter 11 Plan of Reorganization of SiO2 Medical Products, Inc. and Its Debtor Affiliates* (the "**Plan**").

[3] The term "**Non-Released Parties**" means, collectively: (a) Mr. Robert S. Abrams; (b) A. Enterprises LLC; (c) each of the affiliates, related parties and related individuals of each of Mr. Robert S. Abrams and A. Enterprises LLC (collectively with sub-clauses (a) and (b), the "**Abrams Entities**"); (d) all former officers of the Debtors (other than Robert S. Abrams, solely in his role as a former officer of the Debtors) (each, a "**Non-Released Officer**"); (e) the following former directors of the Debtors appointed by the Abrams Entities: (i) Mr. John Stein, (ii) Mr. John Belfance, and (iii) Mr. Tony Rosenberg (each, a "**Non-Released Director**"); (f) customers and trade partners of the Debtors that are not go-forward customers or go-forward trade partners of the Reorganized Debtors against whom the Debtors and/or Reorganized Debtors, as applicable, may hold Avoidance Actions (collectively, the "**Non-Released Commercial Parties**"), and (g) any entity or individual identified by the Capital Raise Committee before the hearing on confirmation of the Plan, if any; provided, for the avoidance of doubt, no such entity or individual shall be an entity or individual included in clauses 1.a, b, c, or d of the "Committee Agrees" section above.

    d.  Full releases of all claims and causes of action against all of the Debtors' employees (which, for the avoidance of doubt, shall not include any Non-Released Party) and vendors and customers of the Reorganized Debtors, other than the U.S. Government/ Biomedical Advanced Research and Development Authority ("**BARDA**") and Moderna, Inc. ("**Moderna**");

    e.  No objection to exculpation provisions;

    f.  No objection to opt-out structure; and

    g.  Plan/Confirmation Order to contain customary "gatekeeper" provision acceptable to the Debtors, the Committee, Athos, and Oaktree.

2. <u>Plan Support</u>:
    a.  Committee to support the Plan and provide a letter in support to accompany the Disclosure Statement that encourages Holders of Class 5 General Unsecured Claims to vote in favor of the Plan.
    b.  Committee agrees not to object to the Plan as amended by the Settlement reflected in this Settlement Term Sheet and to use reasonable efforts to support such Plan.

3. <u>Administrative Costs</u>:
    a.  Committee advisors to cap fees to be incurred after the Settlement Effective Date (defined herein) (even while this Settlement Term Sheet is pending approval, but subject to ultimate Bankruptcy Court approval and consummation of the Settlement) through the effective date of the Plan (the "**Effective Date**") at $750,000 (the "**Committee Fee Cap Amount**").[4]

**Oaktree, Athos, and the Debtors Agree:**

1. <u>Retained/Non-Released Causes of Action</u>:
    a.  All claims and causes of action of the Debtors and the Estates against the Non-Released Parties.
    b.  All of the Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code, other than any claims or causes of action: (i) released in 1.a, 1.b, 1.c, and 1.d of the "<u>Committee Agrees</u>" section above; (ii) against the U.S. Government/BARDA; (iii) against the Reorganized Debtors' go-forward customers (including Moderna); and (iv) against any of the Reorganized Debtors' go-forward trade partners.
    c.  The claims and causes of action described in 1.a and 1.b directly above shall be the "**Liquidation Trust Claims**") to be transferred to a liquidation trust (the "**Liquidation Trust**") established on the Effective Date of the Plan; *provided*, that all other claims and causes of actions not released by the Debtors under the Plan shall be retained by the Reorganized Debtors, including, for the avoidance of doubt, any claims and causes of action against the U.S. Government/BARDA and Moderna.

---

[4]  In addition to the amounts set forth in 4.a and 4.b, any amount of the Committee Fee Cap Amount remaining after payment of all Allowed fees and expenses of the Committee for the period from execution of this Settlement Term Sheet through the Effective Date shall be transferred to the Liquidation Trust.

     d. For the avoidance of doubt, no claim or cause of action that is released in 1.a, 1.b, 1.c, and 1.d of the "<u>Committee Agrees</u>" section above shall be retained by the Reorganized Debtors under the Plan.

2. <u>Limitations on Recovery from Non-Released Claims</u>:

     a. All Liquidation Trust Claims against the Non-Released Parties, are preserved and shall be transferred and/or assigned to the Liquidation Trust; *provided* that: (i) any recovery by the Liquidation Trust (and the beneficiaries thereof) on account of any claim against a Non-Released Officer or a Non-Released Director (each such claim, a "**D&O Claim**"), including in each case by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available director liability insurance policies, including any tail policies, after payment from such policies of any and all covered costs and expenses incurred by any of the Non-Released Officers or Non-Released Directors in connection with the defense of the D&O Claims (or any other claims covered under such policies), *provided* that such actions shall not be against a Released Party; (ii) any party, including the Liquidation Trustee or the beneficiaries thereof, seeking to execute, garnish, or otherwise attempt to collect on any settlement of or judgment in the D&O Claims shall do so solely upon available insurance coverage; and (iii) no party shall (a) record any judgment against any Non-Released Officer or Non-Released Director, or (b) otherwise attempt to collect, directly or indirectly, from the personal assets of any Non-Released Officer or Non-Released Director.

     Only upon the occurrence of the earlier of (x) a release being given as part of any later settlement of the D&O Claims; (y) final resolution of any coverage claims asserted against the Debtors' available director liability insurance policies on account of the D&O Claims; or (z) exhaustion of the available insurance coverage under the director liability insurance policies, the D&O Claims shall be released and discharged without the need for further action or Bankruptcy Court order. For the avoidance of doubt, any release of the D&O Claims shall not become effective until one of the three conditions stated in the preceding sentence above has been met.

     b. The Plan shall contain provision to preserve the Liquidation Trust's rights to: (i) pursue any insurance coverage actions in the event that insurers deny insurance coverage and (ii) retain proceeds of such insurance coverage action.

3. <u>Classification</u>:

     a. Class 5 General Unsecured Claims to include all unsecured claims other than the Claims in the new Class 6.

     b. New Class 6 to consist of the following unsecured[5] claims against the Debtors held by Athos (collectively, the "**Athos Subordinated Claims**"), including the following claims: (a) the Second Lien Term Loan Claims (including any related

---

[5]   For the avoidance of doubt, this excludes claims on account of the Secured Promissory Note entered into on January 17, 2020, with Klinge Biopharma GmbH, as lender (the "**Klinge Equipment Note Claim**"), which Klinge Equipment Note Claim shall be Allowed in Class 1 under the Plan in the amount of $14,404,026.69.

adequate protection claims); (b) claims on account of or otherwise arising under that certain unsecured subordinated promissory note, dated as of May 9, 2022, with an aggregate principal amount of $10 million, by and among SiO2 and Santo Holding GmbH, with a maturity date of April 30, 2023; (c) claims in favor of Patiro AG and/or Patiro Holding AG, as applicable, on account of or otherwise arising under each of (i) that certain Single Promissory Note Purchase Agreement, dated as of April 6, 2018, by and among SiO2 and the other parties thereto, (ii) that certain Promissory Note Purchase Agreement & Credit Facility, dated as of April 6, 2018, by and among SiO2 and the other parties thereto, and (iii) that certain 2019 Promissory Note Purchase Agreement & Credit Facility, dated as of September 24, 2019 by and among SiO2 and the other parties thereto; and (d) claims in favor of Klinge Pharma GmbH, in the amount of $2.5 million, arising under that certain agreement dated October 11, 2021 between SiO2 and Klinge Pharma GmbH. Subject to item 3 in the "Committee Investigation Resolution" section below, and item 1 in the "Miscellaneous" section below, Athos agrees to subordinate all Athos Subordinated Claims, by agreeing to include such claims in Class 6 Athos Subordinated Claims without any admission of fault or liability or that such claims are subject to subordination under the Bankruptcy Code or applicable law. The Athos Subordinated Claims in new Class 6 shall be deemed Allowed in the amount of $109,570,059.

4. GUC Cash Recovery and Liquidation Trust Funding:
    a. $1.25 million of cash provided under Plan for recoveries to Class 5 General Unsecured Claims.
    b. $1,020,000 million of cash provided under the Plan for funding for the Liquidation Trust.

5. D&O Insurance:
    a. Maintain existing policies and include a 6 year tail.
    b. Debtors to reject via the Plan any indemnification obligations and employee obligations in favor of Non-Released Parties.
    c. Debtors to take all actions necessary to preserve insurance coverage with respect to the Liquidation Trust Claims.
    d. Plan, Confirmation Order and Liquidation Trust Agreement to contain customary provisions to preserve insurance coverage with respect to the Liquidation Trust Claims and Non-Released Parties.

**Make-Whole and Sale Proceeds Resolution In Event of Overbid:**

1. Sale Proceeds Waterfall:
    a. If Oaktree receives at least $306 million in cash and take-back debt from the Winning Bidder in the Auction process (if any, and any such cash amounts over $306 million, the "**Excess Sale Proceeds**"), then (i) 50% of such Excess Sale Proceeds shall be distributed Pro Rata to each Holder of an Allowed Class 5 General Unsecured Claim, and (ii) 50% of such Excess Sale Proceeds shall be distributed Pro Rata to each Holder of an Allowed Class 4 First Lien Term Loan

Claim until the $43.0 million on account of the "make whole" due under the First Lien Credit Agreement (the "**Make-Whole Amount**") is paid in full. The Make-Whole Amount shall be deemed allowed in the amount of $43.0 million for purposes of implementing this Settlement Term Sheet.

b. Once Holders of First Lien Term Loan Claims are paid the Make-Whole Amount in full from the Excess Sale Proceeds, to the extent not already satisfied in full, the Excess Sale Proceeds shall be distributed Pro Rata to each Holder of an Allowed Class 5 General Unsecured Claim until all Allowed Class 5 General Unsecured Claims are paid in full.

c. Any remaining Excess Sale Proceeds after the payment of Allowed Class 5 General Unsecured Claims in full to be distributed to holders of Allowed Class 6 Athos Subordinated Claims.

d. Regardless of receipt of Excess Sale Proceeds (if any), Oaktree agrees to waive any deficiency claim on account of its First Lien Term Loan Claims, including with respect to distributions from the Liquidation Trust as described below.

e. Oaktree shall not, pursuant to the intercreditor agreement or otherwise, pursue any turnover from the Holder of Second Lien Term Loan Claims (or any affiliate thereof) of any payments, distributions or other transfers of value made under the Plan, or during the pendency of the chapter 11 cases, to the Holder of Second Lien Term Loan Claims (or any affiliate thereof).

**Liquidation Trust/Claims/Distribution/Investigation Provisions:**

1. <u>Establishment of Liquidation Trust/Liquidation Trust Provisions</u>: If Class 5 General Unsecured Claims and Class 6 Athos Subordinated Claims are paid in full pursuant to the Plan, no Liquidation Trust will be established pursuant to this Settlement Term Sheet.

2. <u>Liquidation Trust to investigate Liquidation Trust Claims</u>:
   a. The Plan, Confirmation Order, and Trust Agreement to contain customary provisions for document retention and cooperation for the benefit of Liquidation Trust pursuing the Liquidation Trust Claims; *provided*, such provisions are acceptable to the Debtors, the Committee, Athos, and Oaktree.
   b. Privilege and documents shall be transferred/provided to the Liquidation Trust for limited purpose of use in its investigations.

3. <u>Claims Resolution</u>:
   a. Liquidation Trust will have primary responsibility for claims resolution process for only Class 5 General Unsecured Claims.
   b. Reorganized Debtors and other parties in interest, including Athos, have express rights to object to and prosecute such objections to Claims not allowed under the Plan.

4. <u>Liquidation Trust Structure and Recovery Waterfall</u>:
   a. Holders of Allowed Class 5 General Unsecured Claims to receive 100% of Liquidation Trust distributions until the Liquidation Trust distributes cash to Holders of Allowed Class 5 General Unsecured Claims equal to a 100% recovery

on account of such claims (taking into account all recoveries on account of such claims under this Settlement Term Sheet and the Plan).

b. After the payment of Allowed Class 5 General Unsecured Claims in full, Holders of Allowed Class 6 Athos Subordinated Claims shall receive all remaining Liquidation Trust distributions.

5. <u>Liquidation Trustee Selection</u>:

a. Liquidation Trustee to be selected by Committee, with approval (not to be unreasonably withheld) of the Debtors, Oaktree (or other Plan Sponsor, if any), and Athos. Committee to draft Liquidation Trust formation documents, and Debtors and Oaktree to have reasonable consent rights over the contents of all such documents.

**Committee Investigation Resolution:**

1. Upon the earlier of (a) execution and filing of a joint stipulation memorializing this Settlement or (b) the filing of the Plan that incorporates the terms of this Settlement Term Sheet (such date, the "**Settlement Effective Date**"), the Committee shall cease its investigations (including, without limitation, all discovery) against Athos (including, for the avoidance of doubt, all Related Parties of Athos, including all current and former directors of the Debtors who are or were appointed by Athos) and Oaktree (including, for the avoidance of doubt, all Related Parties of Oaktree, including all current and former directors of the Debtors who are or were appointed by Oaktree).

a. If the Settlement Term Sheet is not approved by the Bankruptcy Court (which may be via confirmation of the Plan), the Committee's challenge deadline will be extended for the number of days equal to the period from the Settlement Effective Date and the Bankruptcy Court's denial of the Settlement Term Sheet.

2. Notwithstanding the foregoing, the Capital Raise Committee shall be enabled to complete work reasonably necessary to support confirmation of the Plan, including without limitation, in order to justify the release provisions in this Settlement Term Sheet and the Plan and shall cooperate with the Committee in completing such work.

3. To the extent the Capital Raise Committee or the Committee reasonably determines in good faith, in consultation with counsel, based on the findings of the Capital Raise Committee with respect to the releases contemplated under this Settlement Term Sheet, that this Settlement Term Sheet prohibits the Debtors, the Capital Raise Committee, or the Committee, as applicable, from taking or failing to take such action as required by applicable law or its fiduciary obligations, the Capital Raise Committee and the Committee each reserve its respective rights to seek modification of the Plan (which modifications shall be acceptable to Oaktree); *provided*, to the extent the Capital Raise Committee or the Committee exercises such rights, this Settlement Term Sheet shall be terminated as to all parties hereto; *provided further*, if the releases in favor of Athos are modified in a manner not acceptable to Athos in its sole discretion: (a) Athos shall be entitled to amend any or all of its votes on the Plan by the later of (i) ten business days of notice in writing (email being sufficient) to Athos of such decision to amend the Plan or (ii) the Bid Deadline (as defined in the Bidding Procedures Order) established by the Bankruptcy Court; (b) Athos

shall be entitled to terminate its support for the Plan and its obligations under this Settlement Term Sheet, including without limitation, its consent to the subordination of its claims in Class 6; (c) notwithstanding anything contained in this Settlement Term Sheet, Athos shall be entitled to argue that its claims (other than Klinge Equipment Note Claims in Class 1) should be classified in Class 4 or Class 5, as applicable; and (d) Athos otherwise retains all of its rights as if the Settlement Term Sheet was never entered into.

**Miscellaneous**

1. Each party to this Settlement Term Sheet understands and agrees that nothing contained herein is or shall be construed as an admission by any of the parties of any fact or liability of any kind. Without limiting the generality of the foregoing, each party to this Settlement Term Sheet understands and agrees that nothing contained herein is or shall be construed as an admission by Athos that any of its claims are subject to subordination under the Bankruptcy Code or applicable law.

2. Confirmation Order to include language that any adequate protection payments made pursuant to the DIP Order or otherwise are indefeasible.