**Exhibit 3**

**Form Class 3, 4, 5, and 6 Ballot (Joint General Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SIO2 MEDICAL PRODUCTS, INC., *et al.*,[1] | ) ) ) | Case No. 23-10366 (JTD) |
| Debtors. | ) ) | (Jointly Administered) |

**JOINT BALLOT FOR VOTING
TO ACCEPT OR REJECT THE JOINT
CHAPTER 11 PLAN OF SIO2 MEDICAL PRODUCTS, INC.
AND ITS DEBTOR AFFILIATES AND OPT OUT OF RELEASES**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING JOINT BALLOTS CAREFULLY *BEFORE* COMPLETING THIS JOINT BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS JOINT BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY [JULY 10], 2023, AT [4:00] P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of SiO2 Medical Products, Inc., and Its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of SiO2 Medical Products, Inc., and Its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of an order on [●], 2023 [Docket No. [●]] (the "<u>Disclosure Statement Order</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (this "<u>Joint Ballot</u>") because you are a Holder of a Claim in Classes 3, 4, 5 or 6 (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Class</u>") as of **[June 7], 2023** (the "<u>Voting Record Date</u>"). Accordingly, you have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS JOINT BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLAIM.**

Your rights are described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Joint Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SiO2 Medical Products, Inc. (8467); Advanced Bioscience Labware, Inc. (1229); and Advanced Bioscience Consumables, Inc. (2510). The location of the Debtors' principal place of business and service address in these chapter 11 cases is 2250 Riley Street, Auburn, Alabama 36832.

additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://pacer.psc.uscourts.gov; or (b) at no charge from Donlin Recano & Company, Inc. (the "Claims and Noticing Agent") by: (i) accessing the Debtors' restructuring website at https://www.donlinrecano.com/smp; (ii) emailing DRCVote@DonlinRecano.com; or (iii) calling the Claims and Noticing Agent at:

**U.S. Toll Free: 1 (800) 591-8236**
**International: (212) 771-1128**

This Joint Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Joint Ballot in error, or if you believe you have received the wrong ballot, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 3, Class 4, Class 5, or Class 6 under the Plan.

**PLEASE SUBMIT YOUR JOINT BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Electronically, Via Ballot Portal. Submit your Joint Ballot via upload through the Claims and Noticing Agent's online portal, by visiting https://www.donlinrecano.com/clients/smp/vote (the "Ballot Portal") and following the instructions to submit your Ballot.**

**In order to submit a Ballot through the eBallot Portal, you must use the Unique eBallot ID# assigned to your claim. Please complete and submit an electronic Ballot for each eBallot ID# you receive.**

**UNIQUE E-BALLOT IDENTIFICATION _____**

**Each eBallot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each eBallot ID# you receive, as applicable.**

**Creditors who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**The Claims and Noticing Agent's Ballot Portal is the sole manner in which Joint Ballots will be accepted via electronic or online transmission. Joint Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Creditors who cast a Joint Ballot using the Ballot Portal should NOT also submit a paper Ballot.**

*OR*

**Via Paper Ballot. Complete, sign, and date this Joint Ballot and return it (with an original signature) promptly via first-class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**By First Class Mail to:**

**Donlin, Recano & Company, Inc.**
**Re: SiO2 Medical Products, Inc.**
**P.O. Box 199043**
**Blythebourne Station**
**Brooklyn, NY 11219**

**If by Overnight Courier or Hand Delivery:**

**Donlin, Recano & Company, Inc.**

**Re: SiO2 Medical Products Inc.**
**6201 15th Avenue**
**Brooklyn, NY 11219**

**If you would like to coordinate hand delivery of your Joint Ballot, please send an email to DRCVote@DonlinRecano.com and provide the anticipated date and time of your delivery.**

**Item 1.**       **Voting – Complete This Section.**

| | |
|---|---|
| **ITEM 1: PRINCIPAL AMOUNT OF CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a holder) of Claim(s) in a Voting Class as set forth below (your "Claim"). You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.<br><br>Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan. You may not split your vote in any particular Voting Class. If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable box(es) below, your vote in that particular Voting Class will not be counted. If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.<br><br>The holder of the Claims in the Voting Classes set forth below votes to *(please check one and only one box per applicable Voting Claim)*: |

| Voting Class | Description | Amount | Vote to Accept or Reject the Plan |
|---|---|---|---|
| Class 3 | First Lien Term Loan Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4 | Second Lien Term Loan Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5 | General Unsecured Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 6 | Athos Subordinated Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.** **Important information regarding releases under the Plan.**[2]

Article VIII.E of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, their Estates, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions, or the distribution of property pursuant to the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Liquidation Trust Claims, (iii) the Non-Released Parties, and (iv) any post-Effective Date obligations of any party or Entity**

---

[2] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Joint Ballot.

**under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Financing Documents, or any Claim or Obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release. For the avoidance of doubt, the Debtors do not intend to release (i) the Liquidation Trust Claims, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Financing Documents, or any Claim or Obligation arising under the Plan.**

Article VIII.F of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

**Notwithstanding anything contained in this Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party (other than the Debtors or the Reorganized Debtors) is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), before and during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of**

5

**doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property pursuant to the Restructuring Transactions and/or the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) the Liquidation Trust Claims, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Financing, the Exit Financing Documents, or any Claim or obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release. For the avoidance of doubt, no Non-Released Party shall be a Released Party under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*ABRAMS ENTITIES*" MEANS, COLLECTIVELY, (A) ROBERT S. ABRAMS SOLELY IN HIS CAPACITIES AS FOUNDER, DIRECTOR, OFFICER, AND EQUITY HOLDER OF THE DEBTORS; (B) A. ENTERPRISES, LLC; AND (C) EACH OF THEIR RESPECTIVE AFFILIATES AND RELATED PARTIES.

UNDER THE PLAN, "*AVOIDANCE ACTIONS*" MEANS ANY AND ALL AVOIDANCE, RECOVERY, SUBORDINATION, OR OTHER CLAIMS AND CAUSES OF ACTIONS THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES OR OTHER AUTHORIZED PARTIES IN INTEREST UNDER THE BANKRUPTCY CODE OR APPLICABLE NON BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER CHAPTER 5 OF THE BANKRUPTCY CODE OR UNDER SIMILAR OR RELATED STATE OR FEDERAL STATUTES AND COMMON LAW.

UNDER THE PLAN, "*D&O CLAIMS*" MEANS ALL CLAIMS OR CAUSES OF ACTION, IF ANY, HELD BY THE DEBTORS, AND THEIR RESPECTIVE ESTATES OR CREDITORS AGAINST THE NON-RELEASED DIRECTORS AND NON-RELEASED OFFICERS, EACH IN THEIR RESPECTIVE CAPACITIES AS SUCH.

UNDER THE PLAN, "*INSURANCE COVERAGE ACTION*" MEANS ANY ACTION AGAINST AN INSURER (OR TO THE EXTENT NECESSARY TO ENFORCE AN ACTION AGAINST AN INSURER) ASSERTING CLAIMS FOR INDEMNIFICATION, REIMBURSEMENT, CONTRIBUTION, OR OTHER PAYMENT UNDER THE D&O LIABILITY INSURANCE POLICIES, ANY ACTION ASSERTING A VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND ANY RELATED ACTION; PROVIDED, FOR THE AVOIDANCE OF DOUBT, THAT THE INSURANCE COVERAGE ACTIONS SHALL NOT BE ASSERTED AGAINST ANY RELEASED PARTY.

UNDER THE PLAN, "*LIQUIDATION TRUST CLAIMS*" MEANS (A) ANY CLAIMS AND CAUSES OF ACTION HELD BY THE DEBTORS AND THEIR RESPECTIVE ESTATES AGAINST ANY OF THE NON-RELEASED PARTIES, INCLUDING ANY D&O CLAIM, (B) ANY AVOIDANCE ACTION HELD BY THE DEBTORS AND THEIR ESTATES TO THE EXTENT NOT RELEASED UNDER THE PLAN, WHICH SHALL INCLUDE, FOR THE AVOIDANCE OF DOUBT, THE REJECTED EXECUTORY CONTRACT AVOIDANCE ACTIONS AND ALL AVOIDANCE ACTIONS AGAINST THE NON-RELEASED COMMERCIAL PARTIES, AND (C) ANY PROCEEDS DERIVED FROM ANY INSURANCE COVERAGE ACTION.  THE LIQUIDATION TRUST CLAIMS SHALL EXCLUDE ANY RETAINED CAUSES OF ACTION OR CLAIMS OR CAUSES OF ACTION AGAINST (W) ANY OF THE RELEASED PARTIES; (X) BARDA; (Y) THE REORGANIZED DEBTORS' GO-FORWARD CUSTOMERS (INCLUDING MODERNA); AND (Z) THE REORGANIZED DEBTORS' GO-FORWARD TRADE PARTNERS.

UNDER THE PLAN, "*NON-RELEASED COMMERCIAL PARTIES*" MEANS CUSTOMERS AND TRADE PARTNERS OF THE DEBTORS THAT ARE NOT GO-FORWARD CUSTOMERS OR GO-FORWARD TRADE PARTNERS OF THE REORGANIZED DEBTORS AGAINST WHOM THE DEBTORS AND/OR REORGANIZED DEBTORS, AS APPLICABLE, MAY HOLD AVOIDANCE ACTIONS.

UNDER THE PLAN, "*NON-RELEASED DIRECTORS*" MEANS, COLLECTIVELY, EACH OF THE FOLLOWING FORMER DIRECTORS OF THE DEBTORS:  (A) JOHN STEIN; (B) JOHN BELFANCE; AND (C) TONY ROSENBERG.

UNDER THE PLAN, "*NON-RELEASED OFFICERS*" MEANS ALL FORMER OFFICERS OF THE DEBTORS (OTHER THAN ROBERT S. ABRAMS, SOLELY IN HIS ROLE AS A FORMER OFFICER OF THE DEBTORS).

UNDER THE PLAN, "*NON-RELEASED PARTIES*" MEANS, COLLECTIVELY, (A) THE ABRAMS ENTITIES; (B) THE NON-RELEASED COMMERCIAL PARTIES, (C) THE NON-RELEASED DIRECTORS, AND (D) THE NON-RELEASED OFFICERS.  FOR PURPOSES OF CLARITY, IN NO EVENT SHALL ANY OF THE DEBTORS OR THE REORGANIZED DEBTORS BE A NON-RELEASED PARTY UNDER THE PLAN.

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) OAKTREE, INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE INITIAL PLAN SPONSORS AND HOLDERS OF FIRST LIEN TERM LOAN CLAIMS; (D) ANY ULTIMATE PLAN SPONSOR; (E) THE DIP LENDERS; (F) THE AGENTS; (G) ATHOS, INCLUDING, FOR THE AVOIDANCE OF DOUBT, HOLDERS OF SECOND LIEN TERM LOAN CLAIMS AND HOLDERS OF ATHOS SUBORDINATED CLAIMS; (H) ALL HOLDERS OF CLAIMS; (I) THE DEBTORS' EMPLOYEES (WHICH, FOR THE AVOIDANCE OF DOUBT, SHALL NOT INCLUDE ANY NON-RELEASED PARTY); (J) THE REORGANIZED DEBTORS GO-FORWARD VENDORS AND CUSTOMERS, OTHER THAN BARDA AND MODERNA; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (L); (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (L); AND (M) EACH DEBTOR RELATED PARTY OF EACH ENTITY IN CLAUSE (A) AND (B); *PROVIDED*, *HOWEVER*, THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE THIRD PARTY RELEASE; OR (Y) TIMELY OBJECTS TO THE THIRD PARTY RELEASE AND SUCH OBJECTION IS NOT WITHDRAWN BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, *HOWEVER* THAT NOTWITHSTANDING THE FOREGOING OR ANYTHING HEREIN TO THE CONTRARY, NO NON-RELEASED PARTY SHALL BE A RELEASED PARTY UNDER THE PLAN.  FOR THE AVOIDANCE OF DOUBT, THE ABRAMS ENTITIES SHALL NOT BE RELEASED PARTIES IN THEIR CAPACITIES AS GUARANTORS UNDER THE SOUTHERN STATES CAPEX CREDIT AGREEMENT AND THE SOUTHERN STATES CARES CREDIT AGREEMENT, AS THE CASE MAY BE.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) OAKTREE, INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE INITIAL PLAN SPONSORS AND HOLDERS OF FIRST LIEN TERM LOAN CLAIMS; (D) ANY ULTIMATE PLAN SPONSOR; (E) THE DIP LENDERS; (F) THE AGENTS; (G) ATHOS, INCLUDING, FOR THE AVOIDANCE OF DOUBT, HOLDERS OF SECOND LIEN TERM LOAN CLAIMS AND HOLDERS OF ATHOS SUBORDINATED CLAIMS; (H) ALL HOLDERS OF CLAIMS; (I) ALL HOLDERS OF INTERESTS; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (K); AND (K) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (K) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED*, *HOWEVER*, THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; (Y) TIMELY OBJECTS TO THE THIRD PARTY RELEASE AND SUCH OBJECTION IS NOT WITHDRAWN BEFORE CONFIRMATION; OR (Z) IS A NON-RELEASED PARTY.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASSES IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.F OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.F OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.F OF THE PLAN.

**PLEASE TAKE NOTICE THAT IF YOU VOTE IN FAVOR OF THE PLAN, YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN AND CANNOT OPT OUT OF THE RELEASES CONTAINED THEREIN.  ANY OPT OUT OF THE RELEASES CONTAINED IN THE PLAN SUBMITTED ON YOUR BEHALF WILL NOT BE COUNTED.**

**The Holder of the Claims identified in Item 1 elects to:**



☐ **OPT OUT of the Third Party Release**

Article VIII.G of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Notwithstanding anything contained in this Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by**

**any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Exit Financing, the Exit Financing Documents, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, no Non-Released Party shall be an Exculpated Party under the Plan.**

Article VIII.H of the Plan establishes an injunction (the "**Injunction**"):

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth above.**

**The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.E, Article VIII.F, and Article VIII.G hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and**

**(ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Item 3.**      **Certifications.**

By signing this Joint Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) as of the Voting Record Date, either: (i) the Entity is the Holder (or authorized signatory for a Holder) of the Claims in the Voting Class(es) as set forth in Item 1;

(b) the Entity (or in the case of an authorized signatory, the Holder) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) the Entity has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(e) no other Joint Ballots with respect to the amount of the Claim identified in Item 1 has been cast or, if any other Joint Ballots have been cast with respect to such Claim, then any such earlier Joint Ballots are hereby revoked;

(f) the Entity understands and acknowledges that if multiple Joint Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Joint Ballot voting the Claims and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Joint Ballots received by the Claims and Noticing Agent; and

(g) the Entity understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Joint Ballot, and every obligation of the holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the holder and shall not be affected by, and shall survive, the death or incapacity of the holder.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than the Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS JOINT BALLOT ON OR BEFORE [JULY 10], 2023, AT [4:00] P.M., PREVAILING EASTERN TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS JOINT BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

### INSTRUCTIONS FOR COMPLETING THIS JOINT BALLOT

1. The Debtors are soliciting the votes of Holders of Class 3, 4, 5, and 6 Claims with respect to the Plan referred to in the Disclosure Statement. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS JOINT BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Joint Ballot is counted, you *must* complete and submit this Joint Ballot as instructed herein. **Joint Ballots will not be accepted by electronic mail or facsimile.**

4. **Use of Joint Ballot**. To ensure that your Joint Ballot is counted, you must: (a) complete your Joint Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Joint Ballot; and (c) clearly sign and submit your Joint Ballot as instructed herein.

5. Your Joint Ballot *must* be returned to the Claims and Noticing Agent so as to be *actually received* by the Claims and Noticing Agent on or before the Voting Deadline. **The Voting Deadline is [July 10], 2023, at [4:00] p.m., prevailing Eastern Time.**

6. If a Joint Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will *not* be counted**:

    (a) any Ballot that partially rejects and partially accepts the Plan;

    (b) Ballots sent to the Debtors, the Debtors' agents (other than Claims and Noticing Agent), the Debtors' financial or legal advisors or any other person (other than the Claims and Noticing Agent);

    (c) Ballots sent by electronic mail or facsimile;

    (d) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

    (e) any Ballot cast by an Entity that does not hold a Claim in Classes 3, 4, 5, or 6;

    (f) any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

    (g) any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed signed);

    (h) any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed original); and/or

    (i) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7. The method of delivery of Joint Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent *actually receives* the originally executed Joint Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

8. If multiple Joint Ballots are received from the same Holder Claim with respect to the same Class prior to the Voting Deadline, the latest, timely received, and properly completed Joint Ballot will supersede and revoke any earlier received Joint Ballots.

9. You must vote all of your Claims within your respective class either to accept or reject the Plan and may *not* split your vote.

10. This Joint Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11. **Please be sure to sign and date your Joint Ballot**. If you are signing a Joint Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

**PLEASE SUBMIT YOUR JOINT BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S. TOLL FREE:  1(800) 591-8236 (US toll free)**
**INTERNATIONAL: (212) 771-1128 (international)**

**OR BY EMAILING DRCVote@DonlinRecano.com**

**IF THE CLAIMS AND NOTICING AGENT DOES NOT** *ACTUALLY RECEIVE* **THIS JOINT BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS**
**[JULY 10], AT 4:00 P.M., PREVAILING EASTERN TIME, AND IF**
**THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**