**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SIO2 MEDICAL PRODUCTS, INC., *et al.*,[1] | ) | Case No. 23-10366 (JTD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF SIO2 MEDICAL PRODUCTS, INC., AND ITS DEBTOR AFFILIATES**

Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Stacy L. Newman (DE Bar No. 5044)
Seth Van Aalten (admitted *pro hac vice*)
**COLE SCHOTZ P.C.**
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:    (302) 625-3131
Facsimile:    (302) 325-3117
Email:    jalberto@coleschotz.com
    preilley@coleschotz.com
    snewman@coleschotz.com
    svanaalten@coleschotz.com

Brian Schartz, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    bschartz@kirkland.com

-and-

Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    dan.latona@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*          *Co-Counsel to the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  SiO2 Medical Products, Inc. (8467); Advanced Bioscience Labware, Inc. (1229); and Advanced Bioscience Consumables, Inc. (2510). The location of the Debtors' principal place of business and service address in these chapter 11 cases is 2250 Riley Street, Auburn, Alabama 36832.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**GOVERNING LAW, AND OTHER REFERENCES**............................................................1
    A.      *Defined Terms.* ...................................................................................................1
    B.      *Rules of Interpretation.* ...................................................................................16
    C.      *Computation of Time.* .....................................................................................17
    D.      *Governing Law.* ..............................................................................................17
    E.      *Reference to Monetary Figures.* ....................................................................17
    F.      *Reference to the Debtors or the Reorganized Debtors.* ................................17
    G.      *Controlling Document.* ...................................................................................17

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** .............................................18
    A.      *Administrative Claims.* ..................................................................................18
    B.      *Professional Fee Claims.* ..............................................................................18
    C.      *DIP Claims.* ....................................................................................................19
    D.      *Priority Tax Claims.* ......................................................................................20
    E.      *Payment of Certain Fees and Expenses.* .......................................................20
    F.      *Statutory Fees.* ...............................................................................................20

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............................21
    A.      *Summary of Classification.* ...........................................................................21
    B.      *Treatment of Classes of Claims and Interests.* ............................................21
    C.      *Special Provision Governing Unimpaired Claims.* .......................................25
    D.      *Elimination of Vacant Classes.* .....................................................................25
    E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes.* ...................25
    F.      *Subordinated Claims.* ....................................................................................25
    G.      *Controversy Concerning Impairment.* ..........................................................25
    H.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)) of the Bankruptcy Code.*................25

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ......................................25
    A.      *Restructuring Transactions.* ..........................................................................25
    B.      *New Common Stock Transaction.* ..................................................................26
    C.      *Plan Distributions.* .........................................................................................26
    D.      *Corporate Existence.* ......................................................................................27
    E.      *Vesting of Assets in the Reorganized Debtors.* ............................................27
    F.      *Cancellation of Notes, Instruments, Certificates, and Other Documents.* ...28
    G.      *Corporate Action.* ..........................................................................................28
    H.      *New Organizational Documents.* ..................................................................28
    I.      *Directors and Officers.* .................................................................................28
    J.      *Effectuating Documents; Further Transactions.* ..........................................29
    K.      *Section 1146 Exemption.* ...............................................................................29
    L.      *Preservation of Causes of Action.* .................................................................29
    M.      *The Liquidation Trust.* ...................................................................................30
    N.      *D&O Liability Insurance Policies.* .................................................................34
    O.      *Management Incentive Plan.* .........................................................................35
    P.      *Employee and Retiree Obligations.* ...............................................................35
    Q.      *Exemption from Registration Requirements.* .................................................35

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................36
    A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*...................36

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................36
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................37
D.      Insurance Policies.........................................................................................................37
E.      Indemnification Obligations..........................................................................................38
F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements...........38
G.      Reservation of Rights. ...................................................................................................38
H.      Nonoccurrence of Effective Date. .................................................................................39
I.      Contracts and Leases Entered into After the Petition Date. ..........................................39

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** .............................................**39**
A.      Timing and Calculation of Amounts to Be Distributed. .................................................39
B.      Distribution Agent.........................................................................................................39
C.      Rights and Powers of Distribution Agent. .....................................................................39
D.      Delivery of Distributions................................................................................................40
E.      Manner of Payment........................................................................................................40
F.      Compliance with HSR Act. ............................................................................................41
G.      Compliance with Tax Requirements...............................................................................41
H.      Allocations. ...................................................................................................................41
I.      No Postpetition or Default Interest on Claims. .............................................................41
J.      Setoffs and Recoupment. ..............................................................................................41
K.      Claims Paid or Payable by Third Parties. ....................................................................42

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**.....................**42**
A.      Allowance of Claims and Interests. ...............................................................................42
B.      Claims and Interests Administration Responsibilities....................................................43
C.      Estimation of Claims and Interests. ..............................................................................43
D.      Claims Reserve..............................................................................................................43
E.      Adjustment to Claims Without Objection. ......................................................................44
F.      Time to File Objections to Claims. ................................................................................44
G.      Disallowance of Claims. ...............................................................................................44
H.      Amendments to Claims; Additional Claims. ..................................................................44
I.      No Distributions Pending Allowance..............................................................................44
J.      Distributions After Allowance. ......................................................................................44
K.      No Interest.....................................................................................................................45

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ......................**45**
A.      Compromise and Settlement of Claims, Interests, and Controversies. ...........................45
B.      Discharge of Claims.......................................................................................................45
C.      Term of Injunctions or Stays. ........................................................................................45
D.      Release of Liens. ...........................................................................................................45
E.      Debtor Release...............................................................................................................46
F.      Third-Party Release. .....................................................................................................47
G.      Exculpation. ..................................................................................................................48
H.      Injunction. .....................................................................................................................48
I.      Protections Against Discriminatory Treatment. ............................................................49
J.      Reimbursement or Contribution.....................................................................................49
K.      Document Retention. ......................................................................................................50

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**..............................................**50**
A.      Conditions Precedent to Confirmation of the Plan. .......................................................50
B.      Conditions Precedent to the Effective Date. ..................................................................50
C.      Waiver of Conditions Precedent. ...................................................................................51
D.      Substantial Consummation.............................................................................................52
E.      Effect of Non-Occurrence of Conditions to Consummation............................................52

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**.................................52
    A.    *Modification of Plan.* ................................................................................52
    B.    *Effect of Confirmation on Modifications.* .............................................52
    C.    *Revocation or Withdrawal of the Plan.* ................................................52

**ARTICLE XI RETENTION OF JURISDICTION** ..................................................................53

**ARTICLE XII MISCELLANEOUS PROVISIONS** ................................................................54
    A.    *Immediate Binding Effect.* ....................................................................54
    B.    *Additional Documents.* ..........................................................................55
    C.    *Statutory Committee and Cessation of Fee and Expense Payment.* .......55
    D.    *Reservation of Rights.* ...........................................................................55
    E.    *Successors and Assigns.* ........................................................................55
    F.    *Service of Documents.* ...........................................................................55
    G.    *Term of Injunctions or Stays.* ...............................................................56
    H.    *Entire Agreement.* .................................................................................56
    I.    *Plan Supplement.* ..................................................................................57
    J.    *Nonseverability of Plan Provisions.* ......................................................57
    K.    *Votes Solicited in Good Faith.* ........................................ **Error! Bookmark not defined.**
    L.    *Waiver or Estoppel.* ...............................................................................57
    M.    *Closing of Chapter 11 Cases.* ................................................................57

**INTRODUCTION**

SiO2 Medical Products, Inc., and its debtor affiliates, as debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") propose this joint plan of reorganization (together with the documents comprising the Plan Supplement, the "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtors. Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan of reorganization for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

A.    *Defined Terms.*

1.    "*Abrams Entities*" means, collectively, (a) Robert S. Abrams solely in his capacities as founder, director, officer, and equity holder of the Debtors; (b) A. Enterprises, LLC; and (c) each of their respective Affiliates and Related Parties.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and before the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

3.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims (other than Professional Fee Claims), which shall be the later of (a) the deadline established by the Bankruptcy Court and (b) the first Business Day that is 30 days following service of notice of the Effective Date, which notice shall disclose the Administrative Claims Bar Date; *provided* that the Administrative Claims Bar Date shall not apply to (y) claims entitled to administrative priority that arise on or after the Petition Date in the ordinary course of the Debtors' businesses, or (z) Claims subject to section 503(b)(1)(D) of the Bankruptcy Code, or claims for fees due under section 1930 of Title 28 of the United States Code.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

5.    "*Agent Fees and Expenses*" means, collectively, the First Lien Credit Agreement Agent Fees and Expenses and the Second Lien Credit Agreement Agent Fees and Expenses.

6.    "*Agents*" means, collectively, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, and the DIP Agent.

7.    "*Allowed*" means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Filed Proof of Claim (or for which a Proof of Claim is not required to be Filed under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; or (c) a Claim allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been Filed within the applicable period of time fixed

by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so Filed, such Claim is Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is Filed, is not Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Person or Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person or Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  "Allow" and "Allowing" shall have correlative meanings.

8.      "*Assumed Executory Contract and Unexpired Lease List*" means the list of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, subject to the consent of the Plan Sponsor, which list shall be included in the Plan Supplement.

9.      "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors, subject to the consent of the Plan Sponsor, as set forth on the Assumed Executory Contract and Unexpired Lease List.

10.      "*Athos*" means Athos KG and/or any of its controlled subsidiaries, affiliates, or related individuals (including any current or former directors on the Debtors' board of directors appointed or designated by Athos).

11.      "*Athos Subordinated Claims*" means, collectively: (a) the Second Lien Term Loan Claims (including any related adequate protection claims); (b) claims on account of or otherwise arising under that certain unsecured subordinated promissory note, dated as of May 9, 2022, with an aggregate principal amount of $10 million, by and among SiO2 and Santo Holding GmbH, with a maturity date of April 30, 2023; and (c) claims in favor of Patiro AG and/or Patiro Holding AG, as applicable, on account of or otherwise arising under each of (i) that certain Single Promissory Note Purchase Agreement, dated as of April 6, 2018, by and among SiO2 and the other parties thereto, (ii) that certain Promissory Note Purchase Agreement & Credit Facility, dated as of April 6, 2018, by and among SiO2 and the other parties thereto, (iii) that certain 2019 Promissory Note Purchase Agreement & Credit Facility, dated as of September 24, 2019, with an aggregate principal amount of $15,600,000, by and among SiO2 and the other parties thereto, and (iv) indemnification claims in the amount of $2.5 million in favor of Klinge Pharma GmbH on account of that certain agreement dated October 11, 2021 between SiO2 and Klinge Pharma GmbH, in the amount of $2.5 million.  For the avoidance of doubt, no Klinge Equipment Note Claim shall be an Athos Subordinated Claim.  The Athos Subordinated Claims are Allowed in the aggregate amount of $109,570,059.

12.      "*Available Net Litigation Proceeds*" means any proceeds realized from the prosecution, settlement, or other liquidation or monetization of any Claims or Causes of Action vested in the Liquidation Trust after deducting (a) all fees and expenses of administering the Liquidation Trust (including reasonable and documented fees and expenses incurred by the Liquidation Trustee and its professionals), and (b) a reasonable reserve for anticipated future expenses.

13.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Actions that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

14.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

15.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or another court having jurisdiction over the Chapter 11 Cases.

16.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of the Judicial Code, 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

17.     "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed in the Chapter 11 Cases, including solely with respect to Claims held by a Governmental Unit, the Governmental Bar Date.

18.     "*BARDA*" means the U.S. Government and the Biomedical Advanced Research and Development Authority.

19.     "*Bidding Procedures*" means the bidding procedures attached as <u>Exhibit 1</u> to the Bidding Procedures Order, to be agreed by the Debtors and the Initial Plan Sponsors.

20.     "*Bidding Procedures Motion*" means the motion seeking approval of the Bidding Procedures.

21.     "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving the Bidding Procedures and establishing deadlines for the submission of bids and conducting an auction in accordance therewith.

22.     "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

23.     "*Capital Raise Committee*" means the capital raise committee appointed by SiO2's board of directors.

24.     "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

25.     "*Causes of Action*" means any action, claim, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

26.     "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

27.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not asserted or Allowed.

28.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be the date that is the later of (a) one hundred and eighty (180) days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, and approved by an order of the Bankruptcy Court upon a motion on notice to all affected claimants.

29.     "*Claims Register*" means the official register of Claims maintained by the Solicitation Agent.

30.     "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

31.     "*Committee*" means the official committee of unsecured creditors appointed by the U.S. Trustee [Docket No. 118] in the Chapter 11 Cases, pursuant to section 1102(a) of the Bankruptcy Code, as it may be reconstituted from time to time.

32.     "*Company Parties*" means SiO2 Medical Products, Inc., a company incorporated under the laws of the State of Delaware, and each of its Affiliates listed on <u>Exhibit A</u> to the Restructuring Support Agreement, each of which has executed and delivered counterpart signature pages to the Restructuring Support Agreement to counsel to the Consenting Stakeholders.

33.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

34.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

35.     "*Confirmation Objection Deadline*" means the date that is seven (7) days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

36.     "*Confirmation Order*" means the order of the Bankruptcy Court, consistent with the Restructuring Support Agreement and Settlement Term Sheet, confirming the Plan under section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Plan Sponsor.

37.     "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in this Plan, the Restructuring Term Sheet, the Restructuring Support Agreement, and the Settlement Term Sheet.

38.     "*Consenting First Lien Term Loan Lenders*" means the holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, First Lien Term Loan Claims, in their capacity as such, that have executed and delivered counterpart signature pages to the Restructuring Support Agreement, a joinder, or a transfer agreement to counsel to the Company Parties.

39.     "*Consenting Stakeholders*" means, collectively, the Initial Plan Sponsors and the Consenting First Lien Term Lenders.

40.     "*Consummation*" means the occurrence of the Effective Date.

41.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease to be assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

42.     "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan, a notice that (a) sets forth the proposed amount of the Cure Claim to be paid in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases or the proposed amount of the Cure Claim, including the proposed objection deadline, and for the resolution of any such objection by the Bankruptcy Court; and (d) represents that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

43.     "*Cure/Assumption Objection Deadline*" means the date that is 14 days after Filing of the Assumed Executory Contracts and Unexpired Leases List and service of the Cure Notice; *provided* that if any Executory

4

Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases List or proposed to be assigned to a third party, in each case, after the Filing of the initial Assumed Executory Contracts and Unexpired Leases List, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed Executory Contracts and Unexpired Leases List with such modification and (b) the date of the Confirmation Hearing.

44.     "*D&O Claims*" means all Claims or Causes of Action, if any, held by the Debtors, and their respective Estates or creditors against the Non-Released Directors and Non-Released Officers, each in their respective capacities as such.

45.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or Tail Coverage) issued or providing coverage at any time to any of the Debtors or any of their predecessors for liabilities against any of the Debtors' current or former directors, managers, employees, and officers, and all agreements, documents or instruments relating thereto.

46.     "*Debtor Related Party*" means, in each case in its capacity as such, the Debtors': (a) current officers; (b) current and former directors, including, for the avoidance of doubt, directors who are or were (i) members of the Capital Raise Committee (notwithstanding anything to the contrary in the Plan, including rejection of any agreement with members of the Capital Raise Committee), (ii) appointed by Athos, (iii) appointed by Oaktree; (iv) appointed by the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama, (v) appointed by JMC Glass, LLC, (vi) appointed by any customer of the Debtors, and (vii) not a Non-Released Director, in each case, solely in their capacities as such; and (c) managers, members of any governing body (including the members of each Governing Body other than the Non-Released Parties), equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors of such Person or Entity and any such Person's or Entity's respective heirs, executors, estates, and nominees; *provided, however* that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Debtor-Related Party under the Plan.

47.     "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.E of the Plan.

48.     "*Definitive Documents*" means, in each case, subject to the applicable consent rights of the DIP Lenders and the Consenting Stakeholders:  (a) the Restructuring Support Agreement; (b) the Restructuring Term Sheet; (c) the DIP Credit Agreement Documents; (d) the DIP Motion; (e) the DIP Orders; (f) the Bidding Procedures; (g) the Bidding Procedures Motion; (h) the Bidding Procedures Order; (i) the Exit Financing Documents; (j) the solicitation materials; (k) the Plan; (l) the Disclosure Statement; (m) the Disclosure Statement Motion; (n) the Disclosure Statement Order; (o) the New Organizational Documents; (p) all pleadings Filed by the Debtors in the Chapter 11 Cases (and related orders), including the First Day Pleadings (as defined in the Restructuring Support Agreement); (q) the Plan Supplement; (r) the Confirmation Order; (s) any and all filings with or requests for approvals by any Governmental Body; (t) the Restructuring Transactions Memorandum; and (u) any agreements, instruments, and documents as may be necessary or reasonably desirable to consummate and document the Restructuring Transactions agreed to by the Debtors and the Plan Sponsor.

49.     "*DIP Agent*" means Oaktree Fund Administration, LLC, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, its successors, assigns, or any replacement or successor agent appointed pursuant to the terms of the DIP Credit Agreement.

50.     "*DIP Claim*" means any and all Claims arising under, derived from, or based upon the DIP Credit Agreement Documents, the DIP Facility, and the DIP Orders, including all Claims for principal amounts outstanding, interest, fees, expenses, costs, indemnification obligations, reimbursement obligations, and other charges of the DIP Agent and the DIP Lenders arising under or related to the DIP Credit Agreement Documents, the DIP Facility, or the DIP Orders, including the DIP New Money Claims and the DIP Roll-Up Claims.

51.     "*DIP Credit Agreement Documents*" means the DIP Credit Agreement and any related documents or agreements governing the DIP Facility, which shall be consistent in all material respects with the Restructuring Support Agreement and the DIP Orders and otherwise in form and substance satisfactory to the Initial Plan Sponsors.

52.     "*DIP Credit Agreement*" means that certain multi-draw senior secured super-priority priming debtor in possession credit agreement that governs the DIP Facility (as it may be amended, supplemented, or otherwise modified from time to time) among SiO2, as borrower, Debtor guarantors party thereto, the DIP Agent, and the DIP Lenders, which shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance satisfactory to the Initial Plan Sponsors.

53.     "*DIP Facility*" means that certain $120 million multi-draw senior secured, super-priority debtor in possession credit facility, consisting of $60 million in new money loans and $60 million in rolled up First Lien Term Loans, provided by the DIP Lenders on the terms of, and subject to the conditions set forth in, the DIP Credit Agreement Documents, approved by the DIP Orders, and consistent in all material respects with the Restructuring Support Agreement.

54.     "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

55.     "*DIP Motion*" means the motion seeking approval of the DIP Facility.

56.     "*DIP New Money Claim*" means any Claim derived from or based upon the DIP New Money Loans.

57.     "*DIP New Money Loans*" means, collectively, the DIP Loans resulting from the new money term loan extended to the Debtors pursuant to the DIP Facility and DIP Orders.

58.     "*DIP Orders*" means the interim and final orders of the Bankruptcy Court approving the DIP Facility and setting forth the terms on which the Debtors are authorized to use cash collateral, which shall be consistent with the Restructuring Support Agreement and otherwise in form and substance satisfactory to the Debtors and the Initial Plan Sponsors.

59.     "*DIP Roll-Up Claim*" means any Claim derived from or based upon the DIP Roll-Up Loans.

60.     "*DIP Roll-Up Loans*" means, collectively, the DIP Loans resulting from the "roll up" of Prepetition First Lien Term Loan Claims into the DIP Facility pursuant to the DIP Orders.

61.     "*Disallowed*" means any Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is not included on the Schedules and as to which no Proof of Claim or Administrative Claim has been Filed, (c) is included on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Claim has been Filed, or (d) has been withdrawn by the Holder of the Claim or by agreement of the Debtors and the Holder thereof.

62.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or modified from time to time in accordance with the Restructuring Support Agreement.

63.     "*Disclosure Statement Motion*" means the motion seeking approval of the Disclosure Statement, the procedures for the solicitation of votes in connection with the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code and the forms of ballots and notices and related relief, together with all exhibits, appendices, supplements, and related documents.

64.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement.

65.     "*Disputed Claims Reserve*" means a reserve for Plan distributions funded pursuant to Article VII.D hereof, if any.

66.   "*Disputed*" means, with respect to any Claim, a Claim that is subject to an objection or request for estimation Filed by any of the Debtors or the Liquidation Trustee or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

67.   "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or facilitate distributions in accordance with the Plan.

68.   "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the date that the Confirmation Order is entered by the Bankruptcy Court, or such other date as specified in the Confirmation Order.

69.   "*DTC*" means The Depository Trust Company.

70.   "*Effective Date*" means the date that is the first Business Day on which (a) the Confirmation Order is in effect and not subject to stay, (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article X.C of the Plan, and (c) the Debtors declare the Plan effective.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

71.   "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

72.   "*Equitization Restructuring*" means the restructuring transaction pursuant to the Plan, pursuant to which, among other things, the Initial Plan Sponsors shall receive 100% of the New Common Stock in exchange for the Equitized Claims.

73.   "*Equitized Claims*" means, as applicable, the Equitized DIP Claims *plus* the Equitized Term Loan Claims.

74.   "*Equitized DIP Claims*" means the aggregate amount of Allowed DIP Claims outstanding immediately prior to the Effective Date to be equitized under the Plan, as agreed by the Debtors, the DIP Lenders, the First Lien Term Lenders and the Plan Sponsor.

75.   "*Equitized Term Loan Claims*" means the aggregate amount of Allowed Term Loan Claims outstanding immediately prior to the Effective Date to be equitized under the Plan as agreed by the Debtors, the DIP Lenders, the First Lien Term Lenders and the Plan Sponsor.

76.   "*ERISA*" means the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time, and any final regulations promulgated and the rulings issued thereunder.

77.   "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

78.   "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors and Reorganized Debtors; (b) each of the directors or managers of any Debtor who will have served at any point between the Petition Date and the Effective Date; and (c) the Committee; *provided, however* that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be an Exculpated Party under the Plan.

79.   "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

80.   "*Exit Financing*" means one or more "take back" exit term loan facilities that may be provided by the DIP Lenders and/or the First Lien Term Lenders at their election on terms and conditions acceptable to the Company Parties, the DIP Lenders, the First Lien Term Lenders and the Initial Plan Sponsors or such other financing consistent with the Restructuring Term Sheet and any additional exit financing that may be obtained by Reorganized

SiO2 as determined by, and on terms and conditions acceptable to, the Company Parties, DIP Lenders, First Lien Term Lenders, and Plan Sponsor.

81.    "*Exit Financing Documents*" means, collectively, the credit agreements or indentures for the Exit Financing, forms of which shall be included in the Plan Supplement, and all other agreements, documents, and instruments to be entered into in connection with the Exit Financing, in each case in form and substance acceptable to the Plan Sponsor.

82.    "*Exit Financing Lender Parties*" means the lenders or other providers of financing providing the Exit Financing.

83.    "*File*", "*Filed*", or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

84.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

85.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

86.    "*First Lien Credit Agreement Agent Fees and Expenses*" means all unpaid reasonable and documented fees and out-of-pocket expenses (regardless of whether such fees and expenses were incurred before or after the Petition Date) of the First Lien Credit Agreement Agent, including, the reasonable fees and expenses of attorneys or other professionals retained by the First Lien Credit Agreement Agent, in each case that are payable in accordance with the terms of the First Lien Credit Agreement.

87.    "*First Lien Credit Agreement Agent*" means Oaktree Fund Administration, LLC, in its capacity as administrative and collateral agent under the First Lien Credit Agreement.

88.    "*First Lien Credit Agreement*" means the credit agreement dated as of dated as of December 21, 2021, (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among SiO2, as borrower, the subsidiaries of SiO2 party thereto as Subsidiary Guarantors (as defined therein), the First Lien Term Lenders, and the First Lien Credit Agreement Agent.

89.    "*First Lien Term Lenders*" means those banks, financial institutions, and other lenders party to the First Lien Credit Agreement from time to time.

90.    "*First Lien Term Loan Claims*" means any Claim on account of First Lien Term Loans or otherwise arising under the First Lien Credit Agreement.

91.    "*First Lien Term Loans*" means, the secured loans issued pursuant to the First Lien Credit Agreement in the aggregate principal amount prior to the Petition Date of approximately $225 million.

92.    "*First Lien Term Loan Deficiency Claim*" means any First Lien Term Loan Claim that is not a Secured Claim.

93.    "*General Unsecured Claim*" means any Claim that is not: (a) paid in full prior to the Effective Date; (b) a DIP Claim; (c) an Administrative Claim; (d) a Professional Fee Claim; (e) a Priority Tax Claim; (f) an Other Secured Claim; (g) an Other Priority Claim; (h) a First Lien Term Loan Claim; (i) a Second Lien Term Loan Claim; or (j) an Athos Subordinated Claim.

94.       "*General Unsecured Claims Cash Pool*" means $1,250,000 in Cash to be distributed to Holders of Allowed General Unsecured Claims.

95.       "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

96.       "*Governmental Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim held by a Governmental Unit, including claims for unpaid taxes, whether such claims arise from prepetition tax years or periods or prepetition transactions to which the Debtors were a party, must be Filed in the Chapter 11 Cases.

97.       "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

98.       "*Holder*" means a Person or an Entity holding a Claim or an Interest, as applicable.

99.       "*HSR Act*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

100.      "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

101.      "*Indemnification Obligations*" means each Debtor's indemnification obligations in place as of the Effective Date, set forth in any of: (a) the organizational documents of the Debtors (including by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, or board resolutions); (b) employment contracts; or (c) an engagement or retention letter as to professional or advisory services.

102.      "*Initial Plan Sponsors*" means Oaktree Capital Management, L.P. and the Entities affiliated therewith that have executed and delivered counterpart signature pages to the Restructuring Support Agreement, in their capacity as such.

103.      "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

104.      "*Intercompany Interest*" means any Interest in a Debtor other than SiO2.

105.      "*Insurance Policies*" means all insurance policies, including any D&O Liability Insurance Policy and workers' compensation insurance policies, that have been issued at any time to or provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto.

106.      "*Insurer*" means any company or other entity that issued or entered into an Insurance Policy (including any third party administrator) and any respective predecessors and/or affiliates thereof.

107.      "*Insurance Coverage Action*" means any action against an Insurer (or to the extent necessary to enforce an action against an Insurer) asserting claims for indemnification, reimbursement, contribution, or other payment under the D&O Liability Insurance Policies, any action asserting a violation of the implied covenant of good faith and fair dealing, and any related action; *provided,* for the avoidance of doubt, that the Insurance Coverage Actions shall not be asserted against any Released Party.

108.      "*Interest*" means any equity security as such term is defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other

ownership interest in an Entity whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

109. "*Internal Revenue Code*" means title 26 of the United States Code, 26 U.S.C. §§ 1-9834, as amended from time to time.

110. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

111. "*Klinge Equipment Note Claims*" means any Claim on account of or otherwise arising under the Klinge Secured Promissory Note. On the Effective Date, the Klinge Equipment Note Claims shall be Allowed in the aggregate principal amount of $14,404,026.69, *plus* any and all accrued and unpaid interest on such principal amount through the Effective Date, fees, costs, and other amounts due and owing under the Klinge Secured Promissory Note.

112. "*Klinge Secured Promissory Note*" means that certain Secured Promissory Note, dated as of January 17, 2020, between SiO2, as borrower, and Klinge Biopharma GmbH, as noteholder, in the aggregate principal amount of $11,972,971.

113. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

114. "*Liquidation Trust*" means a trust to be established on the Effective Date for the benefit of Holders of Allowed General Unsecured Claims and Holders of Allowed Athos Subordinated Claims, pursuant to the terms of the Liquidation Trust Agreement and the Plan.

115. "*Liquidation Trustee*" means the Person or Entity selected by the Committee, with the approval (such approval not to be unreasonably withheld) of the Debtors, the Plan Sponsor, and Holders of Second Lien Term Loan Claims, to serve as the trustee of the Liquidation Trust, identified and disclosed in the Plan Supplement, and any successor thereto appointed pursuant to the Liquidation Trust Agreement, as appointed in accordance with the Liquidation Trust Agreement.

116. "*Liquidation Trust Agreement*" means a trust or similar agreement entered into no later than the Effective Date that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trust, a form of which shall be included in the Plan Supplement, and which shall constitute a Definitive Document for purposes of the Restructuring Support Agreement.

117. "*Liquidation Trust Assets*" means (a) all rights, title, and interest in the Liquidation Trust Claims, including all documents and records of the Debtors relating thereto such as all electronic records, documents or work products, solely to the extent such documents and records are necessary to prosecute such rights, title, and interest, (b) the Liquidation Trust Funding, and (c) any proceeds derived from any Insurance Coverage Action.

118. "*Liquidation Trust Beneficiaries*" means the Holders of Liquidation Trust Interests.

119. "*Liquidation Trust Claims*" means (a) any Claims and Causes of Action held by the Debtors and their respective Estates against any of the Non-Released Parties, including any D&O Claim, (b) any Avoidance Action, held by the Debtors and their Estates to the extent not released under the Plan, which shall include, for the avoidance of doubt, the Rejected Executory Contract Avoidance Actions and all Avoidance Actions against the Non-Released Commercial Parties; and (c) any proceeds derived from any Insurance Coverage Action. The Liquidation Trust Claims shall exclude any Retained Causes of Action or Claims or Causes of Action against (w) any of the Released Parties; (x) BARDA; (y) the Reorganized Debtors' go-forward customers (including Moderna); and (z) the Reorganized Debtors' go-forward trade partners.

120. "*Liquidation Trust Class A Interests*" means the class A beneficial interests in the Liquidation Trust, as provided for in the Liquidation Trust Agreement.

121.    "*Liquidation Trust Class B Interests*" means the class B beneficial interests in the Liquidation Trust, as provided for in the Liquidation Trust Agreement.

122.    "*Liquidation Trust Funding*" means $1,020,000 in Cash, which shall be distributed by the Reorganized Debtors on the Effective Date directly to the Liquidation Trust.

123.    "*Liquidation Trust Interests*" means all beneficial interests in the Liquidation Trust, as provided for in the Liquidation Trust Agreement.

124.    "*Management Incentive Plan*" means a management incentive plan, if any, implemented after the Effective Date by the Reorganized Debtors' Board in its sole discretion (including through the issuance of New Common Stock) for certain of the Debtors' directors, officers, and employees.

125.    "*Moderna*" means Moderna, Inc. and any of its controlled affiliates and subsidiaries.

126.    "*New Board*" means the board of directors of Reorganized SiO2 on and after the Effective Date.

127.    "*New Common Stock*" means the equity interests in Reorganized SiO2, which may be in the form of common stock, preferred stock, limited liability interests, or other ownership interests and may be issued in one or more classes of each of the foregoing, in each case, as determined by the Debtors and the Plan Sponsor.

128.    "*New Organizational Documents*" means the forms of the certificates or articles of incorporation, bylaws, shareholder agreements, or other formation or governance documents of Reorganized SiO2, which shall be in form and substance consistent with the approval rights set forth in the Restructuring Support Agreement and in any event acceptable to the Plan Sponsor.

129.    "*Non-Debtor Subsidiaries*" means all direct and indirect subsidiaries of any Debtor that are not Debtors in these Chapter 11 Cases.

130.    "*Non-Released Commercial Parties*" means customers and trade partners of the Debtors that are not go-forward customers or go-forward trade partners of the Reorganized Debtors against whom the Debtors and/or Reorganized Debtors, as applicable, may hold Avoidance Actions.

131.    "*Non-Released Directors*" means, collectively, each of the following former directors of the Debtors: (a) John Stein; (b) John Belfance; and (c) Tony Rosenberg.

132.    "*Non-Released Officers*" means all former officers of the Debtors (other than Robert S. Abrams, solely in his role as a former officer of the Debtors).

133.    "*Non-Released Parties*" means, collectively, (a) the Abrams Entities; (b) the Non-Released Commercial Parties; (c) the Non-Released Directors; and (d) the Non-Released Officers.  For purposes of clarity, in no event shall any of the Debtors or the Reorganized Debtors be a Non-Released Party under the Plan.

134.    "*Oaktree*" means Oaktree Capital Management, L.P. and/or any of its affiliates or funds.

135.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

136.    "*Other Secured Claim*" shall mean any Secured Claim that is not a DIP Claim or First Lien Term Loan Claim, but includes any Renasant AR and Inventory Claims, any Southern States Capex Loan Claims, any Southern States CARES Loan Claims, and any Klinge Equipment Note Claims.

137.    "*Person*" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated association, governmental entity, or political subdivision thereof, or any other entity.

138.    "*Petition Date*" means the date on which each Debtor commenced its Chapter 11 Case.

139.    "*Plan*" means this plan of reorganization for the Debtors, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto, as it may be amended or supplemented from time to time, consistent with the approval rights set forth in the Restructuring Support Agreement and Settlement Term Sheet.

140.    "*Plan Sponsor*" means the Initial Plan Sponsors.

141.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Restructuring Support Agreement and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date, including the following, as applicable:  (a) New Organizational Documents; (b) Exit Financing Documents; (c) the Assumed Executory Contracts and Unexpired Leases List; (d) the Schedule of Retained Causes of Action; (e) a document listing the members of the New Board; (f) the Restructuring Transactions Memorandum (if applicable); and (g) the Liquidation Trust Agreement.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in this Plan, subject to the approval rights of the Committee, the DIP Lenders, the First Lien Term Lenders, the Plan Sponsor, and Athos (to the extent such documents affect any legal rights of Athos) over such documents.

142.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

143.    "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in all Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan.

144.    "*Professional*" means a Person or an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and compensated for services rendered before or on the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

145.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

146.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors on the Effective Date with the Professional Fee Escrow Amount.

147.    "*Professional Fee Escrow Amount*" means the amount equal to the total estimated amount of Professional Fee Claims.

148.    "*Promissory Note Purchase Agreement & Credit Facility*" means that certain Promissory Note Purchase Agreement & Credit Facility, dated as of April 6, 2018, by and among SiO2 and the other parties thereto.

149.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Cases by the applicable Bar Date.

150.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Class of Claims or Interests, that the Claims or Interests in such Class shall be rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code.

151.    "*Rejected Executory Contract Avoidance Action*" means any Avoidance Action against a counterparty to a rejected executory contract.

152.    "*Related Party*" means, with respect to any Person or Entity, other than the Debtors, each of, and in each case in its capacity as such, current and former directors, managers, officers, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors of such Person or Entity and any such Person's or Entity's respective heirs, executors, estates, and nominees; *provided, however* that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Related Party under the Plan.

153.    "*Released Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) Oaktree, including, for the avoidance of doubt, the Initial Plan Sponsors and Holders of First Lien Term Loan Claims; (d) any ultimate Plan Sponsor; (e) the DIP Lenders and the DIP Agent; (f) the Agents; (g) Athos, including, for the avoidance of doubt, Holders of Second Lien Term Loan Claims and Holders of Athos Subordinated Claims; (h) all Holders of Claims; (i) the Debtors' employees (which, for the avoidance of doubt, shall not include any Non-Released Party); (j)  the Reorganized Debtors go-forward vendors and customers, other than BARDA and Moderna; (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l); (l) each Related Party of each Entity in clause (a) through this clause (l); and (m) each Debtor Related Party of each entity in clause (a) and (b); *provided, however*, that in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the Third Party Release; or (y) timely objects to the Third Party Release and such objection is not withdrawn before Confirmation; *provided, further, however* that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Released Party under the Plan.  For the avoidance of doubt, the Abrams Entities shall not be Released Parties in their capacities as guarantors under the Southern States Capex Credit Agreement and the Southern States CARES Credit Agreement, as the case may be.

154.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) Oaktree, including, for the avoidance of doubt, the Initial Plan Sponsors and Holders of First Lien Term Loan Claims; (b) any ultimate Plan Sponsor; (c) the DIP Lenders and the DIP Agent; (d) the Agents; (e) Athos, including, for the avoidance of doubt, Holders of Second Lien Term Loan Claims and Holders of Athos Subordinated Claims; (f) all Holders of Claims; (g) all Holders of Interests; (h) each current and former Affiliate of each Entity in clause (a) through the following clause (i) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (i) each Related Party of each Entity in clause (a) through this clause (i) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law; *provided, however*, that in each case, an Entity shall not be a Releasing Party if it:  (w) elects to opt out of the release contained in the Plan; (x) timely objects to the Third Party Release and such objection is not withdrawn before Confirmation; (y) is an Entity in a voting class whose solicitation package was returned as undeliverable or as to whom no solicitation package was served pursuant to paragraph 18 of the Disclosure Statement Order; or (z) is a Non-Released Party.

155.    "*Renasant AR and Inventory Claims*" means any Claim on account of the Renasant AR and Inventory Credit Facility or otherwise arising under the Renasant AR and Inventory Credit Agreement.

156.    "*Renasant AR and Inventory Credit Agreement*" means that certain Amended and Restated Credit Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), dated as of February 26, 2021, between SiO2, as borrower, and Renasant Bank, as the bank.

157.    "*Renasant AR and Inventory Facility*" means the secured loans issued pursuant to the Renasant AR and Inventory Credit Agreement consisting of (a) a purchased receivables credit facility in an amount of up to $15,000,000; and (b) a revolving credit facility in an amount of up to $10,000,000.

158.    "*Reorganized Debtor*" means a Debtor on and after the Effective Date (or any successor thereto, by merger, consolidation, or otherwise).

159.    "*Reorganized SiO2*" means SiO2 Medical Products, Inc., as reorganized pursuant to the Plan, or one or more new entities as determined by the Company Parties and the Plan Sponsor.

160.    "*Required DIP Lenders*" has the meaning set forth in the DIP Credit Agreement.

161.    "*Restructuring*" means the restructuring of the Debtors under chapter 11 of the Bankruptcy Code in accordance with the Restructuring Support Agreement.

162.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of the Petition Date, by and among the Debtors and certain Holders of Claims and Interests, including all exhibits and schedules attached thereto, as may be amended in accordance with its terms.

163.    "*Restructuring Term Sheet*" means that certain restructuring term sheet, attached as <u>Exhibit A</u> to the Restructuring Support Agreement.

164.    "*Restructuring Transactions Memorandum*" means one or more written documents (which may be in the form of a written memorandum or a PowerPoint or similar presentation format) illustrating the various Restructuring Transactions, which documents may be amended from time to time prior to the Effective Date in accordance with the Restructuring Support Agreement.

165.    "*Restructuring Transactions*" means, collectively, those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions, that the Debtors and the Plan Sponsor reasonably determine to be necessary to implement the Plan in a manner consistent with the Restructuring Support Agreement, the Restructuring Term Sheet, and the Restructuring Transactions Memorandum, and which shall include the Plan Sponsor causing Reorganized SiO2 to take all actions necessary to effectuate the Restructuring Transactions in accordance with the Plan and the Restructuring Transactions Memorandum.

166.    "*Retained Causes of Action*" means, collectively, any (a) Avoidance Actions and (b) Cause of Action listed on the Schedule of Retained Causes of Action; *provided* that no Retained Cause of Action shall be a Liquidation Trust Claim or a Claim or Cause of Action that is released under the Plan and Confirmation Order; *provided further*, that all other Claims and Causes of Action not released by the Debtors under the Plan shall be retained by the Reorganized Debtors, including, for the avoidance of doubt, any claims and causes of action against the U.S. Government/BARDA and Moderna.

167.    "*Schedules*" means the schedules required under Bankruptcy Rule 1007 and filed at Docket No. 217, as may be amended, supplemented, or revised from time to time.

168.    "*Schedule of Retained Causes of Action*" means a schedule of Causes of Action retained by the Reorganized Debtors filed as part of the Plan Supplement which shall be in form and substance consistent with the Settlement Term Sheet and approval rights set forth in the Restructuring Support Agreement and reasonably acceptable to the Plan Sponsor.  For the avoidance of doubt, the Schedule of Retained Causes of Action shall not include (a) any Claim or Cause of Action that is released under the Plan and Confirmation Order, or (b) any Liquidation Trust Claim.

169.    "*SEC*" means the Securities and Exchange Commission.

170.    "*Second Lien Credit Agreement Agent Fees and Expenses*" means all unpaid reasonable and documented fees and out-of-pocket expenses (regardless of whether such fees and expenses were incurred before or after the Petition Date) of the Second Lien Credit Agreement Agent, including the reasonable fees and expenses of attorneys or other professionals retained by the Second Lien Credit Agreement Agent, in each case that are payable in accordance with the terms of the Second Lien Credit Agreement and/or DIP Orders.

171.    "*Second Lien Credit Agreement Agent*" means Salzufer Holding Inc., in its capacity as administrative and collateral agent under the Second Lien Credit Agreement, and any successor agent under the Second Lien Credit Agreement.

172.    "*Second Lien Credit Agreement*" means the second lien credit agreement and guaranty dated as of December 7, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among SiO2, as borrower, the subsidiaries of SiO2 party thereto as Subsidiary Guarantors (as defined therein), the Second Lien Term Loan Lenders, and the Second Lien Credit Agreement Agent.

173.    "*Second Lien Term Loan Claim*" means any Claim on account of the Second Lien Term Loans or otherwise arising under or in connection with the Second Lien Credit Agreement.

174.    "*Second Lien Term Loan Deficiency Claim*" means any Second Lien Term Loan Claim that is not a Secured Claim. For the avoidance of doubt, the Second Lien Term Loan Deficiency Claim shall be an Allowed Athos Subordinated Claim.

175.    "*Second Lien Term Loan Lenders*" means those banks, financial institutions, and other lenders party to the Second Lien Credit Agreement from time to time

176.    "*Second Lien Term Loans*" means the secured loans issued pursuant to the Second Lien Credit Agreement in the aggregate principal amount of $35,000,000.

177.    "*Section 510(b) Claim*" means any Claim arising from:  (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

178.    "*Secured*" means, when referring to a Claim, a Claim:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, enforceable, and non-avoidable pursuant to applicable law or by reason of a Bankruptcy Court order, or (b) that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

179.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

180.    "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

181.    "*Settlement Term Sheet*" means the term sheet regarding resolution of certain key terms of this Plan between Oaktree, Athos, the Debtors, and the Committee in the form attached to the Disclosure Statement as <u>Exhibit G</u>.[2]  In the event of any conflict between the terms of the Plan and the terms of the Settlement Term Sheet, the terms of the Settlement Term Sheet shall govern.

182.    "*SiO2*" means SiO2 Medical Products, Inc., a Delaware corporation or any successor or assign, by merger, consolidation, or otherwise, prior to the Effective Date.

183.    "*Solicitation Agent*" means Donlin, Recano & Company, Inc., the noticing, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

184.    "*Southern States Capex Credit Agreement*" means that certain Credit Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), dated as of February 3, 2020, between SiO2, as borrower, and Southern States Bank, as the bank.

---

[2]    The compromises and settlements provided in the Settlement Term Sheet apply in the context of the Plan and are subject to:  (a) Oaktree's rights to toggle from an Equitization Restructuring to a sale pursuant to section 363 of the Bankruptcy Code and (b) the parties' respective rights provided under the DIP Facility and the DIP Orders; *provided, however,* that if Oaktree exercises such toggle right, (x) the Settlement Term Sheet shall be terminated and the Committee shall not be bound by its terms and (y) the Committee shall have 30 days from the date of the notice of Oaktree's exercise of such toggle right to commence a challenge pursuant to paragraph 16 of the Final DIP Order.

185.    "*Southern States Capex Loan Claims*" means any Claim on account of the Southern States Capex Loans or otherwise arising under the Southern States Capex Credit Agreement.

186.    "*Southern States Capex Loans*" means the secured loans issued pursuant to the Southern States Capex Credit Agreement in the aggregate principal amount of $11,846,278.35.

187.    "*Southern States CARES Credit Agreement*" means that certain Credit Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), dated as of December 30, 2020, between SiO2, as borrower, and Southern States Bank, as the bank.

188.    "*Southern States CARES Loan Claims*" means any Claim on account of the Southern States CARES Loans or otherwise arising under the Southern States CARES Credit Agreement.

189.    "*Southern States CARES Loans*" means the secured loans issued pursuant to the Southern States CARES Credit Agreement in the aggregate principal amount of $19,535,340.20.

190.    "*State and Local Income Returns*" means any and all state and local income or franchise tax returns that include SiO2 or any of its subsidiaries that utilize federal taxable income as the basis for calculation of tax due.

191.    "*Tail Coverage*" means the extension of liability insurance policy coverage under the D&O Liability Insurance Policies for the six-year period following the Effective Date.

192.    "*Tax Law*" means U.S. federal income tax law.

193.    "*Tax Structure*" means the structure of the Restructuring Transactions to provide for a tax-efficient implementation acceptable to the Company Parties and the Plan Sponsor.

194.    "*Third-Party Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.F of the Plan.

195.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

196.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

197.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal

16

law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (18) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (19) unless otherwise specified, a "former" director or officer of the Debtors shall mean a Person who had previously served in such capacity, but was no longer serving as of the Petition Date.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan Supplement document or in the

Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# ARTICLE II
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of such Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash:  (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim;

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims and Claims subject to section 503(b)(1)(D) of the Bankruptcy Code, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party by the Claims Objection Deadline.

B.      *Professional Fee Claims.*

1.      <u>Final Fee Applications and Payment of Professional Fee Claims.</u>

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred before the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

2.      <u>Professional Fee Escrow Account.</u>

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the

Professional Fee Escrow Account (such amount subject to the Settlement Term Sheet) shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. Any remaining amount in the Professional Fee Escrow Account that is attributable to the Committee's professionals, shall be transferred to the Liquidation Trust pursuant to footnote 4 of the "Committee Agrees" section 1.3a of the Settlement Term Sheet. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Reorganized Debtors.

       3.       <u>Professional Fee Reserve Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors or pursuant to their respective retention orders (a) before and as of the Confirmation Date and (b) from the Confirmation Date through and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

       4.       <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and Reorganized Debtors, as applicable, shall pay, within ten business days after submission of a detailed invoice to the Debtors or Reorganized Debtors, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors or the Reorganized Debtors, as applicable. If the Debtors or the Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or the Reorganized Debtors, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

*C.*       *DIP Claims*.

As of the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding plus all other amounts due and owing under the DIP Credit Agreement Documents on such date.

Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for all Allowed DIP Claims, each Holder of an Allowed DIP Claim (which shall include interest, fees, and all other amounts due and owing under the DIP Facility) shall receive on account of such Allowed DIP Claims at the election of the Initial Plan Sponsors, its Pro Rata share of New Common Stock and/or its Pro Rata share of the Exit Financing or such other treatment agreed by the Debtors and the DIP Lender.

Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of the Plan, all Liens and security interests securing the DIP Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Person or Entity.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the DIP Facility and the DIP Credit Agreement Documents shall continue in full force and effect (other than, for the avoidance of doubt, any

Liens or other security interests terminated pursuant to this section) after the Effective Date with respect to any contingent or unsatisfied obligations thereunder, as applicable, including those provisions relating to the rights of the DIP Agent and the DIP Lenders to expense reimbursement, indemnification, and other similar obligations of the Debtors to the DIP Agent and the DIP Lenders (which rights shall be fully enforceable against the Reorganized Debtors) and any provisions thereof that may survive termination or maturity of the DIP Facility in accordance with the terms thereof.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Certain Fees and Expenses.*

The Debtors and Reorganized Debtors (as applicable) shall pay in Cash all reasonable and documented fees and expenses of the advisors to the (i) Initial Plan Sponsors, First Lien Term Lenders, and DIP Lenders, including (a) Sullivan & Cromwell LLP, (b) Young Conaway Stargatt & Taylor, LLP, and (c) Houlihan & Lokey, Inc., in each case in accordance with the terms and conditions of any applicable agreement with the Debtors, including the DIP Credit Agreement Documents and the Restructuring Support Agreement, and the DIP Orders, and (ii) Second Lien Credit Agreement Agent, including (a) Katten Muchin Rosenman LLP and (b) Richards, Layton & Finger, P.A., in each case in accordance with the terms and conditions of any applicable agreement with the Debtors, including the DIP Credit Agreement Documents, the DIP Orders and Second Lien Credit Agreement, and if any such fee and/or expense is unpaid as of the Effective Date such fee and/or expense shall be paid on the Effective Date without application to or approval of the Bankruptcy Court, which fees and/or expenses shall be Allowed as an Administrative Claim upon occurrence of the Effective Date and shall not be subject to any offset, defense, counter-claim, reduction or credit.

The Debtors and Reorganized Debtors (as applicable) shall, on the Effective Date, pay the Agent Fees and Expenses (whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without application by any such parties to the Bankruptcy Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise; *provided, however,* if the Debtors or Reorganized Debtors and the First Lien Credit Agreement Agent or the Second Lien Credit Agreement Agent, as applicable, cannot agree with respect to the reasonableness of the respective Agent Fees and Expenses to be paid to each such party (other than the fees and expenses of the advisors to the Initial Plan Sponsors, First Lien Term Lenders, and DIP Lenders specifically addressed in clauses (a) through (c) of the immediately preceding paragraph, which shall not be subject to dispute), the reasonableness of any such Fees and Expenses shall be determined by the Bankruptcy Court (with any undisputed amounts to be paid by the Debtors and Reorganized Debtors (as applicable) on the Effective Date and any disputed amounts to be escrowed by the Debtors and Reorganized Debtors (as applicable)).  For the avoidance of doubt, the Second Lien Credit Agreement Agent shall not be entitled to dispute the reasonableness of the Agent Fees and Expenses payable to the Initial Plan Sponsors, the First Lien Term Lenders, the DIP Lenders or the First Lien Credit Agreement Agent.

F.      *Statutory Fees.*

All fees payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") due before the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, all Quarterly Fees shall be paid to the U.S. Trustee when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidation Trustee and each of the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  After the Effective Date, the Reorganized Debtors shall pay all Quarterly Fees payable; *provided,* that upon notice from the Reorganized Debtors to the Liquidation Trustee that the Chapter 11 Cases can be closed, if the Liquidation Trustee decides to keep any such cases open after such notice, the Quarterly Fees shall be paid by the Liquidation Trust alone.  The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      *Summary of Classification.*

Claims and Interests, except for DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, are classified as set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the Effective Date.

1.      Class Identification.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Athos Subordinated Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Interests in SiO2 | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Classes of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.      Class 1 – Other Secured Claims

(a)      *Classification*:  Class 1 consists of all Other Secured Claims.

(b)      *Treatment*:  On the Effective Date, each holder of an Allowed Other Secured Claim shall receive:

(i)      payment in full in Cash in an amount equal to its Allowed Other Secured Claim;

    (ii)    the collateral securing its Allowed Other Secured Claim;

    (iii)    reinstatement of its Allowed Other Secured Claim;

    (iv)    such other treatment of an Allowed Other Secured Claim as agreed between the Holder of such Allowed Other Secured Claim and the Debtors; or

    (v)    such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Priority Claims</u>

(a)    *Classification*: Class 2 consists of all Other Priority Claims.

(b)    *Treatment*: On the Effective Date, each holder of an Allowed Other Priority Claim shall be paid in full in Cash on the Effective Date or in the ordinary course of business (by the Reorganized Debtors) as and when due, or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – First Lien Term Loan Claims</u>

(a)    *Classification*: Class 3 consists of all First Lien Term Loan Claims.

(b)    *Allowance*: On the Effective Date, the First Lien Term Loan Claims shall be Allowed in the aggregate principal amount of $276,028,511.96, *plus* any and all accrued and unpaid interest on such principal amount through the Effective Date, fees, costs, and other amounts due and owing under the First Lien Term Loan Credit Agreement.

(c)    *Treatment:* On the Effective Date, each Holder of an Allowed First Lien Term Loan Claim shall receive at the election of the Initial Plan Sponsors, its Pro Rata share of New Common Stock and/or its Pro Rata share of the Exit Financing pursuant to the Equitization Restructuring or such other treatment as agreed by such holders.

(d)    *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed First Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – Second Lien Term Loan Claims</u>

(a)    *Classification*: Class 4 consists of all Second Lien Term Loan Claims.

(b)    *Allowance*: On the Effective Date, pursuant to the Settlement Term Sheet, the Second Lien Term Loan Claims shall be Allowed as Class 6 Claims in the aggregate principal amount of $35,000,000, *plus* accrued and unpaid interest on such principal amount through the Effective Date and other amounts due and owing under the Second Lien Credit Agreement.

(c)     *Treatment*:  Pursuant to the Settlement Term Sheet, Holders of Allowed Second Lien Term Loan Claims have agreed that such Claims will recover as Class 6 Athos Subordinated Claims on the Effective Date.

(d)     *Voting*:  Class 4 is Impaired under the Plan.  Holders of Second Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – General Unsecured Claims</u>

(a)     *Classification*:  Class 5 consists of all General Unsecured Claims against any Debtor that are not expressly Class 6 Athos Subordinated Claims.

(b)     *Treatment*:  As soon as reasonably practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, unless such holder has agreed to other such treatment in writing, its Pro Rata share of:

(i)      the General Unsecured Claims Cash Pool; and

(ii)     distributions on account of its Liquidation Trust Class A Interests, to the extent provided in Article IV.M.5 of the Plan.

In no event shall any Holder of an Allowed General Unsecured Claim receive, on account of such Claim, a recovery greater than 100% of the Allowed amount of such Claim.

(c)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.      <u>Class 6 - Athos Subordinated Claims</u>

(a)     *Classification*:  Class 6 consists of all Athos Subordinated Claims.

(b)     *Allowance*:  As soon as reasonably practicable after the Effective Date, the Athos Subordinated Claims shall be Allowed in the aggregate amount of $109,570,059, *plus* accrued and unpaid interest on such amounts as of the Effective Date.  For the avoidance of doubt, no holder of a Claim or Interest, as applicable, in Classes 7-10 or any other class junior to Class 6 shall receive any distribution under the Plan unless and until the Allowed Athos Subordinated Claims have been indefeasibly paid in full in Cash or received such other treatment as agreed to by the holder of such Allowed Athos Subordinated Claim in its sole discretion.

(i)      *Treatment*:  On the Effective Date, each Holder of an Allowed Athos Subordinated Claim shall receive, unless such holder has agreed to other such treatment in writing, its Pro Rata share of the distributions in respect of its Liquidation Trust Class B Interests, if any, after all Allowed Claims in Class 5 have been paid in full or otherwise satisfied, to the extent provided in Article IV.M.5 of the Plan.

In no event shall any Holder of an Allowed Athos Subordinated Claim receive, on account of such Claim, a recovery greater than 100% of the Allowed amount of such Claim.

(c)     *Voting*:  Class 6 is Impaired under the Plan.  Holders of Athos Subordinated Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 – Intercompany Claims

    (a)     *Classification*:  Class 7 consists of all Intercompany Claims.

    (b)     *Treatment*:  On the Effective Date, Intercompany Claims shall be Reinstated, set off, settled, distributed, contributed, cancelled, released, or otherwise addressed at the option of the Reorganized Debtors, subject to the consent of the Plan Sponsor, without any distribution.

    (c)     *Voting*:  Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.     Class 8 – Intercompany Interests

    (a)     *Classification*:  Class 8 consists of all Intercompany Interests.

    (b)     *Treatment*:  Subject to the Restructuring Transactions Memorandum, on the Effective Date, Intercompany Interests shall be Reinstated, set off, settled, contributed, cancelled, or released or otherwise addressed at the option of the Reorganized Debtors, subject to the consent of the Plan Sponsor, without any distribution.

    (c)     *Voting*:  Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

9.     Class 9 – Section 510(b) Claims

    (a)     *Classification*:  Class 9 consists of all Section 510(b) Claims.

    (b)     *Treatment*:  On the Effective Date, Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of their Section 510(b) Claims, and all Section 510(b) Claims shall be discharged.

    (c)     *Voting*:  Class 9 is Impaired.  Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

10.    Class 10 – Interests in SiO2

    (a)     *Classification*:  Class 10 consists of all Interests in SiO2.

    (b)     *Treatment*:  On the Effective Date, all Interests in SiO2 shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.  Holders of Interests shall receive no recovery or distribution on account of their Interests in SiO2.

    (c)     *Voting*:  Class 10 is Impaired.  Holders of Interests in SiO2 are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Interests in SiO2 are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

F.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, and subject to the Restructuring Support Agreement and the Settlement Term Sheet, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules; *provided* that the Committee and Athos shall have consent rights (such consent not to be unreasonably withheld) over such modifications to the extent inconsistent with the Settlement Term Sheet; *provided further* that the Debtors shall notify the U.S. Trustee of such modifications.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions.*

On or after the Confirmation Date, the Debtors and the Reorganized Debtors, in each case with the consent of the Plan Sponsor, may take all actions and enter into any transactions as may be necessary or appropriate to effect any Restructuring Transactions, including those set forth in the Restructuring Transaction Memorandum and including:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation,

consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (1), pursuant to applicable state law; (4) all transactions necessary to provide for the purchase or other acquisition of substantially all of the assets or Interests of any of the Debtors, which purchase or acquisition, for the avoidance of doubt, may be structured as a taxable sale of the assets of the Debtors for United States federal income tax purposes; (5) the adoption of a Management Incentive Plan, if applicable, on the terms and conditions set by the New Board after the Effective Date; (6) the execution and delivery of the Exit Financing Documents; (7) the execution and delivery of the New Organizational Documents; and (8) all other actions that the applicable Entities determine, with the consent of the Plan Sponsor, to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Restructuring Transactions. Additionally, prior to the Effective Date, the Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to effectuate transactions that are intended to be implemented prior to the Effective Date in accordance with the Restructuring Support Agreement and the Settlement Term Sheet.

B.      *New Common Stock Transaction*.

100% of the New Common Stock shall be distributed on account of the Equitized Claims as set forth in the Plan.

C.      *Plan Distributions.*

Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person or Entity receiving such distribution or issuance.

1.      <u>Cash for Distribution</u>.

The Reorganized Debtors shall use (i) Cash on hand, (ii) Cash from the Exit Financing, as applicable, and (iii) the General Unsecured Claims Cash Pool to fund distributions to certain Holders of Allowed Claims and Interests, consistent with the terms of the Plan.

2.      <u>Issuance and Distribution of the New Common Stock</u>.

The issuance of Securities under the Plan, including the shares of the New Common Stock and options or other equity awards, if any, reserved under the Management Incentive Plan (if any), shall be authorized without the need for any further corporate action and without any further action by the Holders of Claims or Interests.

All of the shares of New Common Stock issued pursuant to the Plan, as well as any options for the purchase thereof and equity awards associated therewith, shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

At the election of the Plan Sponsor, the New Common Stock may be subject to a stockholders' agreement and/or the holders of New Common Stock will be provided with registration rights, in each case, on the terms and conditions that are mutually acceptable to the Reorganized Debtors and the Plan Sponsor.

3.    Exit Financing.

On the Effective Date, at the election of the DIP Lenders, the Reorganized Debtors, any Non-Debtor Subsidiaries agreed to by the Debtors, the Plan Sponsor, and the Exit Financing Lender Parties, the Reorganized Debtors, and the Exit Financing Lender Parties shall consummate the Exit Financing on the terms, and subject to the conditions, acceptable to the Reorganized Debtors, the Exit Financing Lender Parties, and the Plan Sponsor.  On and after the Effective Date, the Exit Financing Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.  The Exit Financing constitutes indebtedness.  Except to the extent otherwise required by law, the Reorganized Debtors and Exit Financing Lender Parties agree that the Exit Financing shall be treated as debt for all U.S. federal, state, local and foreign tax purposes.

Confirmation shall be deemed approval of the Exit Financing and the Exit Financing Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized Debtors are authorized to execute and deliver any and all documents necessary or appropriate to consummate the Exit Financing, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person.

On the Effective Date, or as soon as reasonably practicable thereafter, all of the Liens and security interests to be granted in accordance with the Exit Financing Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Financing Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Financing Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

D.    Corporate Existence.

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed pursuant to the New Organizational Documents.

E.    Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or contained in the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action (including all Causes of Action identified in the Schedule of Retained Causes of Action), and any property acquired by any of the Debtors, including Interests held by the Debtors in Non-Debtor Subsidiaries, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, Interests, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.       *Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, indentures, instruments, certificates, and other documents evidencing Claims and Interests in SiO2, shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full; provided, that notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of, as applicable:  (a) enabling Holders of Allowed Claims under such agreements to receive distributions under the Plan as provided herein and (b) allowing and preserving the rights of any applicable paying agent to (i) make distributions in satisfaction of Allowed Claims under such agreements, (ii) maintain and exercise their respective charging liens against any such distributions, (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making such distributions, (iv) maintain and enforce any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim or entitlement, (v) exercise their rights and obligations relating to the interests of their holders, and (vi) appear and be heard in these Chapter 11 Cases.

G.       *Corporate Action.*

All actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:  (1) the implementation of the Restructuring Transactions and all actions contemplated by Article IV.A; (2) the selection of the directors and officers for the Reorganized Debtors; (3) the incurrence of the Exit Financing; (4) the adoption of a Management Incentive Plan, if any, by the New Board and grant of awards, if any, thereunder; (5) the issuance and distribution of New Common Stock, including on the Effective Date; and (6) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized SiO2 and the other Reorganized Debtors, and any corporate action required by the Debtors, Reorganized SiO2, or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, Reorganized SiO2, or the other Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, Reorganized SiO2, or the other Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan or the Restructuring Transactions Memorandum) in the name of and on behalf of Reorganized SiO2 and the other Reorganized Debtors, including the Exit Financing Documents, the New Common Stock, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

H.       *New Organizational Documents.*

On or immediately before the Effective Date, the Debtors or Reorganized Debtors, as applicable, will file their New Organizational Documents with each applicable Secretary of State and/or other applicable authorities in their respective states of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation.  After the Effective Date, the Reorganized Debtors may amend and restate their New Organizational Documents as permitted by the laws of their respective jurisdiction of formation and the terms of such documents.

I.        *Directors and Officers.*

On the Effective Date, the New Board shall consist of the members appointed by the Plan Sponsor.  The number and identities of directors on the New Board shall be determined by the Plan Sponsor.  On the Effective Date, the terms of the current members of the SiO2 board of directors shall expire, and the New Board will include those directors set forth in the list of directors of the Reorganized Debtors included in the Plan Supplement.  To the extent that any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors will disclose the nature of any compensation to be paid to such director or officer.

*J.*      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Support Agreement, the Settlement Term Sheet, the Restructuring Transactions Memorandum, the Management Incentive Plan (if any), and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

*K.*      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person or Entity) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt or equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the Restructuring Transactions Memorandum; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*L.*      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated herein (including by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, subject to the releases and exculpations contained in Article VIII of the Plan.**  Unless any Cause of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Person or Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, Filing, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.L include any Claim or Cause of Action with respect to, or against, a Released Party or Exculpated Party that is released under this Plan.

M.      *The Liquidation Trust.*

1.      Governance.

The Liquidation Trust shall be formed on the Effective Date, unless all claims in Classes 4, 5, and 6 are satisfied in full in Cash on or before such date.  The Liquidation Trust will be governed by the Liquidation Trust Agreement, which will be Filed as part of the Plan Supplement and administered by the Liquidation Trustee.  In the event of any conflict between the terms of the Plan and the terms of the Liquidation Trust Agreement, the terms of the Plan shall govern.

The Liquidation Trust Agreement shall provide for the appointment of the Liquidation Trustee and shall be drafted by the Committee and subject to the consent of the Debtors, Oaktree, and Athos (such consent not to be unreasonably withheld).  The Liquidation Trustee shall be selected by the Committee, with approval (not to be unreasonably withheld) of the Debtors, Oaktree, and Athos.  The Debtors will disclose the identity of the initial Liquidation Trustee in the Plan Supplement.  The retention of the Liquidation Trustee shall be approved in the Confirmation Order.

The Liquidation Trustee shall owe fiduciary duties to the Liquidation Trust Beneficiaries and shall have in place under the Liquidation Trust Agreement applicable indemnity, limitation of liabilities, and waiver provisions to protect the Liquidation Trustee from being personally liable for any claims or causes of action asserted by the Liquidation Trust Beneficiaries, except for any clams of fraud, gross negligence, or willful misconduct.

The Liquidation Trustee shall have the power to administer the assets of the Liquidation Trust in accordance with the Liquidation Trust Agreement.  The Liquidation Trustee shall be the Estate representative designated to prosecute any and all Liquidation Trust Claims pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Liquidation Trustee shall (a) hold, administer, and prosecute the assets of the Liquidation Trust and any proceeds thereof, (b) have the power and authority to retain, as an expense of the Liquidation Trust, attorneys, advisors, other professionals, and employees as may be appropriate to perform the duties required of the Liquidation Trustee under the Liquidation Trust Agreement, (c) make distributions as provided in the Liquidation Trust Agreement, and (d) provide periodic reports and updates regarding the status of the administration of the Liquidation Trust.  The Liquidation Trustee shall be deemed the Distribution Agent under the Plan when making distributions to holders of Liquidation Trust Interests.

2.      Initial Contributions.

On the Effective Date, the Reorganized Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust and, together with the Liquidation Trustee, take all steps necessary to establish the Liquidation Trust in accordance with and pursuant to the terms of the Plan and the Liquidation Trust Agreement.  Under no circumstances shall the Debtors or the Reorganized Debtors or any other party be required to contribute any additional assets to the Liquidation Trust other than the Liquidation Trust Assets.  In no event shall the Liquidation Trustee have any authority to pursue Claims or Causes of Action against any Released Party and the Liquidation Trust Agreement shall also so stipulate.

If the Liquidation Trustee determines to assign, sell, or otherwise transfer any of the Liquidation Trust Claims, any such assignment, sale, or transfer will be subject in all respects to the Plan and the Settlement Term Sheet (including, for the avoidance of doubt, all contractual limitations on recovery related to such claims).

The transfer of the Liquidation Trust Funding and the Liquidation Trust Claims to the Liquidation Trust shall be made, as provided herein, for the benefit of the Liquidation Trust Beneficiaries.  Upon the transfer of the Liquidation Trust Funding and the Liquidation Trust Claims, the Debtors or the Reorganized Debtors, as the case may be, shall have no interest in or with respect to the Liquidation Trust Funding, the Liquidation Trust Claims, or the Liquidation Trust.  To the extent that any Liquidation Trust Assets cannot be transferred to the Liquidation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidation Trust Assets shall be deemed to have been retained by the Reorganized Debtors and the Liquidation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidation Trust Assets on behalf of the Reorganized Debtors.  Notwithstanding the foregoing, all net proceeds of such Liquidation Trust Assets shall be transferred to the Liquidation Trust to be distributed to the Liquidation Trust Beneficiaries consistent with the terms of the Plan and the Liquidation Trust Agreement.

The Reorganized Debtors and the Capital Raise Committee shall make reasonable best efforts to retain and transfer all documents relating to the Liquidation Trust Claims to the Liquidation Trust and shall make reasonable best efforts to cooperate with the Liquidation Trust in pursuing the Liquidation Trust Claims; *provided* that neither the Reorganized Debtors nor the Capital Raise Committee shall be liable to the Liquidation Trust for non-compliance with this provision unless such liability is decided by the Bankruptcy Court.

3.      Contractual Agreement Regarding Recovery From D&O Claims.

Any recovery by the Liquidation Trust (and the Liquidation Trust Beneficiaries thereof) on account of any D&O Claim, including in each case by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O Liability Insurance Policies, including any tail policy or Tail Coverage, after payment from such D&O Liability Insurance Policies of any and all covered costs and expenses incurred by any of the Non-Released Officers or Non-Released Directors in connection with the defense of the D&O Claims (or any other claims covered under such policies); *provided* that such actions shall not be against a Released Party.  Any party, including the Liquidation Trustee or the Liquidation Trust Beneficiaries, seeking to execute, garnish, or otherwise attempt to collect on any settlement of or judgment in the D&O Claims shall do so solely upon available insurance coverage; and no party shall (a) record any judgment against any Non-Released Officer or Non-Released Director, or (b) otherwise attempt to collect, directly or indirectly, from the personal assets of any Non-Released Officer or Non-Released Director.

Only upon the occurrence of the earlier of (a) a release being given as part of any later settlement of the D&O Claims; (b) final resolution of any insurance coverage claims asserted against the Debtors' D&O Liability Insurance Policies on account of the D&O Claims; or (c) exhaustion of the available insurance coverage under the D&O Liability Insurance Policies, the D&O Claims shall be released and discharged without the need for further action or Bankruptcy Court order.  For the avoidance of doubt, (a) any release of the D&O Claims shall not become effective until one of the three conditions stated in the preceding sentence above has been met; and (b) notwithstanding the foregoing, in no instance will (i) any recovery on account of any Liquidation Trust Claim against any of the Abrams Entities be limited to available insurance coverage from the D&O Liability Insurance Policies or any other Insurance Policy; nor will (ii) any party be precluded from (x) recording any judgment or other claim against the Abrams Entities or (y) otherwise attempting to collect from the personal and/or corporate assets of the Abrams Entities.

In connection with any Insurance Coverage Action, the Liquidation Trust shall (i) have the right to select capable and competent counsel with experience in insurance coverage and/or related litigation matters, as applicable, to represent the Non-Released Directors; (ii) have the right to control the commencement, prosecution, disposition, settlement, or other resolution of the Insurance Coverage Action; and (iii) be responsible for all costs and attorney's fees incurred by the Non-Released Directors in connection with the prosecution or defense of such actions by counsel selected by the Liquidation Trust.  The Non-Released Directors shall cooperate fully and in good faith with the Liquidation Trust in pursuing or defending any Insurance Coverage Action, if necessary, and as applicable.

4.      Claims.

As set forth in Article VII.B hereof, the Liquidation Trust shall have the primary authority to (a) File, withdraw, or litigate to judgment any objections to Class 5 General Unsecured Claims; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to such Claims; (c) settle, compromise, or resolve any Disputed Class 5 General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided* that the Reorganized Debtors and other parties in interest, including Athos, shall have the right to object to and prosecute such objections to such General Unsecured Claims.

5.      Distributions.

Following the Effective Date, the Available Net Litigation Proceeds resulting from any adjudication of Liquidation Trust Claims shall be distributed ratably to Holders of Liquidation Trust Interests pursuant to and in accordance with the Plan and the Liquidation Trust Agreement; *provided* that Available Net Litigation Proceeds will be distributed in the following order:  *first*, Pro Rata to the Holders of Liquidation Trust Class A Interests until all Holders of Allowed General Unsecured Claims are paid in full; and *second*, Pro Rata to Holders of Liquidation Trust Class B Interests until all Holders of Allowed Athos Subordinated Claims are paid in full.  In the event there are Available Net Litigation Proceeds after satisfying the Allowed Claims in the preceding sentence, such Proceeds shall be distributed to the Reorganized Debtors.

6.      Tax, Securities, and Other Matters.

The Liquidation Trust shall be established for the purpose of liquidating and distributing the Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with this Plan and the Liquidation Trust Agreement. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidation Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust, and the Liquidation Trustee will take this position on the Liquidation Trust's tax return accordingly.  For U.S. federal income tax purposes, all the parties and Liquidation Trust Beneficiaries shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as if the Liquidation Trust Assets (other than such assets attributable to Disputed Claims, and subject to any obligations relating to such Liquidation Trust Assets) had been first transferred to the Liquidation Trust Beneficiaries and then transferred by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for Liquidation Trust Interests. As a result, the transfer of the Liquidation Trust Assets to the Liquidation Trust is expected to be a taxable transaction, and the Debtors are accordingly expected to recognize gain or loss equal to the difference between the tax basis and fair value of the Liquidation Trust Assets.  The Liquidation Trust Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors and deemed owners of the Liquidation Trust.  The Liquidation Trustee shall file or cause to be filed returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) to the extent permitted by applicable law.  The Liquidation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit.  As soon as reasonably practicable after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries shall take consistent positions with respect to the valuation of the Liquidation Trust Assets, and such valuation shall be utilized consistently for all federal income tax purposes.

With respect to amounts, if any, in a reserve for Disputed Claims, it is expected that such account will be treated as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  A separate federal income tax return shall be filed with the IRS for any such disputed claims reserve, and such reserve will be subject to tax annually on a separate entity basis.  Any taxes (including with respect to interest, if any, earned in the account, or any recovery on the portion of assets allocable to such account in excess of the disputed claims reserve's basis in such assets) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to

pay such taxes).  Liquidation Trust Beneficiaries will be bound by such election, if made by the Liquidation Trustee, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

The Liquidation Trust's taxable income (other than taxable income allocable to any assets attributable to a "disputed ownership fund") shall be allocated by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its assets (valued at their book value), other than assets allocable to Disputed Claims, to the Liquidation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior distributions from the Liquidation Trust.  Similarly, taxable loss of the Liquidation Trust shall be allocated by reference to the manner in which economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidation Trust Assets.

The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  Upon delivery of the Liquidation Trust Assets to the Liquidation Trust, the Reorganized Debtors shall be released from all liability with respect to the delivery of such distributions.

The Debtors or Reorganized Debtors, as applicable, shall provide the Liquidation Trust with reasonable access to the books and records of the Debtors or Reorganized Debtors concerning the Liquidation Trust Claims, subject to applicable privileges to be set forth in greater detail in the Liquidation Trust Agreement.

The Liquidation Trust Interests shall not be registered pursuant to the Securities Act or any state securities law.  It is intended that the Liquidation Trust Interests shall not constitute "securities" under applicable laws.  To the extent the Liquidation Trust Interests are deemed to be "securities" under applicable laws, the issuance of the Liquidation Trust Interests to Holders of Allowed Unsecured Claims and Holders of Allowed General Unsecured Claims shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.  The Liquidation Trust Interests shall be non-transferable.

The Liquidation Trust shall in no event be dissolved later than five years from the creation of such Liquidation Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five years without a private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) for the Liquidation Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.

In connection with the vesting and transfer of the Liquidation Trust Assets, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic, or otherwise) held by the Debtors shall be transferred to the Liquidation Trust and shall vest in the Liquidation Trust.  Accordingly, in connection with the prosecution and/or investigation of claims held by the Liquidation Trustee, no directors, officers, employees, counsel, agents, or attorneys-in-fact of the Debtors, may assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic, or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidation Trustee in discovery (whether formal or informal).

      7.     <u>Withholding</u>.

The Liquidation Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Internal Revenue Code or any provision of any state, local, or non-U.S. tax Law with respect to any payment or distribution to the Liquidation Trust Beneficiaries.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution.  All such amounts

deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Liquidation Trust Beneficiaries for all purposes of this Agreement, to the extent permitted by applicable Law. The Liquidation Trustee shall be authorized to collect such tax information from the Liquidation Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and the Liquidation Trust Agreement and to determine whether any deduction or withholding applies with respect to a payment to such Liquidation Trust Beneficiary and the amount of such deduction or withholding.

As a condition to receive distributions under the Plan, all Liquidation Trust Beneficiaries may be required to identify themselves to the Liquidation Trustee and provide tax information and the specifics of their holdings, to the extent requested by the Liquidation Trustee, including an IRS Form W-9 or, in the case of Liquidation Trust Beneficiaries that are not U.S. persons for U.S. federal income tax purposes, certification of foreign status on an applicable IRS Form W-8, including all applicable supporting documents. This identification requirement may, in certain cases, extend to Holders who hold their securities in street name. The Liquidation Trustee may refuse to make a distribution to any Liquidation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that upon the delivery of such information by a Liquidation Trust Beneficiary, the Liquidation Trustee shall make such distribution to which the Liquidation Trust Beneficiary is entitled, without interest; provided, further, that if the Liquidation Trustee fails to withhold in respect of amounts received or distributable with respect to any such Holder and the Liquidation Trustee is later held liable for the amount of such withholding, such Holder shall reimburse the Liquidation Trustee for such liability. If a Liquidation Trust Beneficiary fails to comply with such a request for tax information within ninety days, the Liquidation Trustee may file a document with the Bankruptcy Court that will provide twenty-one days' notice before such distribution may be deemed an unclaimed distribution. In the event that the Liquidation Trustee elects to make distributions through an intermediary (such as DTC), the party who would be the withholding agent with respect to distributions to the Liquidation Trust Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Liquidation Trustee.

N.     *D&O Liability Insurance Policies.*

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the D&O Liability Insurance Policies (notwithstanding anything to the contrary in the Plan, including rejection of any agreement with members of the Capital Raise Committee). Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations, including, without limitation, any Indemnification Obligations, assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan, and no objection to a Cure Notice or a proposed Cure Claim or a request, application, Claim, Proof of Claim, Cure Claim or motion for payment or allowance of any Administrative Claim need be Filed or served with respect thereto and no Bar Date, Administrative Claims Bar Date, or similar deadline governing Cure Claims or other Claims shall apply thereto; *provided however* that, notwithstanding the foregoing, any Indemnification Obligations or other employee obligations in favor of the Non-Released Parties shall be deemed and treated as an Executory Contract that has been rejected by the Reorganized Debtors under the Plan, and the Debtors and the Reorganized Debtors shall not honor, pay, or reimburse any claims by a Non-Released Party for indemnification or reimbursement.

The Debtors have obtained Tail Coverage. The Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including any D&O Liability Insurance Policy providing the Tail Coverage) in effect, other than those Indemnification Obligations or other employee obligations in favor of the Non-Released Parties deemed rejected, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time before the Effective Date of the Plan shall be entitled, in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

On and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

O.    *Management Incentive Plan.*

On or after the Effective Date, the Reorganized Debtors may adopt and implement a Management Incentive Plan (including through the issuance of New Common Stock) for certain of the Debtors' directors, officers, and employees.  The New Board, in its sole discretion, shall be authorized to institute such Management Incentive Plan and enact and enter into related policies and agreements.  For the avoidance of doubt, the terms and conditions of any Management Incentive Plan (including any related agreements, policies, programs, other arrangements, and Management Incentive Plan participants) shall be determined by the New Board in its sole discretion on or after the Effective Date, and the Bankruptcy Court's confirmation of the Plan shall in no way approve of or authorize the terms of any such Management Incentive Plan.

P.    *Employee and Retiree Obligations.*

The Debtors may, with the consent of the Plan Sponsor, approve, assume, and adopt the Debtors' written contracts, agreements, policies, programs and plans for, among other things, compensation, bonuses, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the Debtors' current and former employees, directors, officers, and managers, including the executive compensation programs and all existing compensation arrangements for the employees of the Debtors.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date all retiree benefits under any plan, fund, or program maintained or established by the Debtors prior to the Petition Date, if any, shall continue to be paid in accordance with applicable law.

Q.    *Exemption from Registration Requirements.*

Pursuant to section 1145 of the Bankruptcy Code or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act and Regulation D thereunder, the offering, issuance and distribution of the New Common Stock as contemplated hereof will be exempt from the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local laws requiring registration.

The shares of New Common Stock to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Common Stock in the New Organizational Documents.

The shares of New Common Stock that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder or, solely to the extent section 4(a)(2) of the Securities Act or Regulation D thereunder is not available, any other available exemption from registration under the Securities Act, will be considered "restricted securities", will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

# ARTICLE V
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.       *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the date that is ninety (90) days after the Effective Date, each Executory Contract and Unexpired Lease, not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the final Assumed Executory Contracts and Unexpired Leases List; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract or Unexpired Lease that is pending on the Confirmation Date; (3) is a contract, release, or other agreement or document entered into in connection with the Plan; or (4) is an Insurance Policy.

Notwithstanding anything to the contrary in the Plan, the Debtors and the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List with the consent of the Plan Sponsor (i) to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List at any time prior to the Effective Date, and (ii) to remove any Executory Contract or Unexpired Lease from the Assumed Executory Contracts and Unexpired Leases List at any time through and including ninety (90) days after the Effective Date, which removal shall constitute rejection of the applicable Executory Contract or Unexpired Lease; *provided* that, subject to Article V.C hereof, at any time during such ninety (90)-day period after the Effective Date, the Reorganized Debtors shall remain liable for any and all amounts incurred under any such Executory Contracts and Unexpired Leases on the Assumed Executory Contracts and Unexpired Leases List in the ordinary course of business; *provided further*, that, subject to Article V.C hereof, on the first Business Day that follows such ninety (90)-day period, (i) to the extent any Executory Contracts and Unexpired Leases remain on the Assumed Executory Contracts and Unexpired Leases List, such Executory Contracts and Unexpired Leases shall be deemed assumed Executory Contracts and Unexpired Leases and the Reorganized Debtors shall pay any and all Cure Claims owing under such Assumed Executory Contracts and Unexpired Leases pursuant to section 365 of the Bankruptcy Code or (ii) to the extent the Reorganized Debtors have filed an amended or otherwise modified Assumed Executory Contracts and Unexpired Leases List, removing any Executory Contract or Unexpired Lease, such Executory Contracts and Unexpired Leases shall be deemed rejected pursuant to section 365 of the Bankruptcy Code.  The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.       *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Counterparties to Executory Contracts or Unexpired Leases listed on the Rejected Executory Contracts and Unexpired Leases List shall be served with a notice of rejection of their Executory Contracts and Unexpired Leases substantially in the form approved by the Disclosure Statement Order as soon as reasonably practicable following entry of such order.  Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the earliest to occur of (1) thirty (30) days after the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection on the affected Claimant, which notice shall set forth the date by which such Proofs of Claim must be filed, or (2) thirty (30) days after service of notice on the affected Claimant of any rejection that occurs after the Effective Date.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

*C.*     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree, with the consent of the Plan Sponsor.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption or assumption and assignment and proposed amounts of Cure Claims to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and <u>actually received</u> by the Debtors at least seven days before the Confirmation Hearing.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and cure amount.  Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Schedule of Rejected Executory Contracts and Unexpired Leases after such 14-day deadline, a Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may, with the consent of the Plan Sponsor, add such Executory Contract or Unexpired Lease to the Rejected Executory Contracts and Unexpired Leases List, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.

*D.*     *Insurance Policies.*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other Definitive Document, any Cure Notice or other notice of any Cure Claim, any bar date notice, any claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a) on the Effective Date, the Reorganized Debtors shall be deemed to have assumed all Insurance Policies in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code;

(b) on and after the Effective Date, the Reorganized Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Insurance Policies, regardless of whether such obligations arise before or after the Effective Date, without the need or requirement for Insurers to file or serve any objection to a Cure Notice or a proposed Cure Claim or a request, application, Claim, Proof of Claim, Cure Claim or motion for payment or allowance of any Administrative Claim and without Insurers being subject to any Bar Date, Administrative Claims Bar Date, or similar deadline governing Cure Claims or other Claims;

(c) all Insurance Policies, the terms and conditions thereof and all legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Reorganized Debtors), and any other individual or entity, as applicable, under any Insurance Policies, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and all such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred;

(d) nothing shall permit or otherwise effectuate a sale, assignment or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer; and

(e) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (ii) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (x) workers' compensation claims, (y) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (z) all costs in relation to each of the foregoing; and (iii) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff).

E.     Indemnification Obligations.

The Debtors and Reorganized Debtors shall assume the Indemnification Obligations for the Debtors' current and former directors (other than the Non-Released Parties) and current officers, managers, and employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose: *provided however* that, notwithstanding the foregoing, any Indemnification Obligations or other employee obligations in favor of the Non-Released Parties shall be deemed and treated as an Executory Contract that has been rejected by the Reorganized Debtors under the Plan, and the Debtors and the Reorganized Debtors shall not honor, pay, or reimburse any claims by a Non-Released Party for indemnification or reimbursement.

F.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.     Reservation of Rights.

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases List, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

*H.*     *Nonoccurrence of Effective Date.*

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

*I.*     *Contracts and Leases Entered into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest) each Holder of an Allowed Claim and Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VII.  Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

*B.*     *Distribution Agent.*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

*C.*     *Rights and Powers of Distribution Agent.*

1.     Powers of the Distribution Agent.

The Distribution Agent or its designee shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.     <u>Expenses Incurred On or After the Effective Date</u>.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Distribution Agent or its designee on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent or its designee shall be paid promptly in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions.*

    1.    <u>Delivery of Distributions in General</u>.

    Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the Distribution Agent, as appropriate:  (a) to the signatory set forth on any Proof of Claim or Proof of Interest Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is Filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Distribution Agent, as appropriate, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Reorganized Debtors, and the Distribution Agent, and any applicable paying agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

    2.    <u>Undeliverable Distributions and Unclaimed Property</u>.

    In the event that any distribution to any Holder is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Reorganized Debtors have determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the initial attempted distribution.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

    3.    <u>Minimum Distributions</u>.

    No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows:  (a) fractions of one half or greater shall be rounded to the next higher whole number and (b) fractions of less than one half shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

    Holder of an Allowed Claim or Claims entitled to distributions of $50 or less in the aggregate total amount of such Claim(s) shall not receive distributions, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or their property.

E.    *Manner of Payment.*

    Except as otherwise set forth herein, all distributions of New Common Stock to Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the Debtors or Reorganized Debtors, as applicable.  All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Reorganized Debtor.  At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*F.        Compliance with HSR Act.*

To the extent that any Holder will hold New Common Stock valued in excess of the relevant reporting thresholds under the HSR Act as a result of distributions to be made on the Effective Date and the acquisition of New Common Stock by such Holder either (i) is not eligible for an exemption under the HSR Act or (ii) is required to be notified to the US antitrust agencies pursuant to the HSR Act and the relevant waiting period associated therewith has not expired or been terminated as of the Effective Date, then such Holder shall sell a sufficient amount of New Common Stock such that by the end of the day on the Distribution Record Date, such holder will hold New Common Stock valued at or below the relevant reporting threshold under the HSR Act.

*G.        Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Property deposited into any Claim distribution accounts described elsewhere in the Plan (including any Disputed Claims Reserves) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

*H.        Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

*I.        No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

*J.        Setoffs and Recoupment.*

Unless otherwise provided in the Plan, the DIP Orders, or the Confirmation Order, pursuant to section 553 of the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of the Allowed Claim, each Debtor and each Reorganized Debtor may set off or recoup any Allowed Claim against the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor

the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. The Debtors or Reorganized Debtors, as applicable, shall provide notice to the affected claimant of any setoff, and such claimant shall have the right to challenge such setoff in the Bankruptcy Court.

K.      *Claims Paid or Payable by Third Parties.*

        1.      Claims Paid by Third Parties.

        The Debtors, or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided*, that the Debtors or the Reorganized Debtors, as applicable, shall provide notice of such reduction to the Holder of such Claim. To the extent a Holder of a Claim receives a distribution from the Debtors or Reorganized Debtors on account of such Claim and also receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the total amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is repaid.

        2.      Claims Payable by Third Parties.

        No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Insurers satisfies in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' satisfaction of such Claim, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Solicitation Agent without a Claims objection having to be Filed and without any further action, order, or approval of the Bankruptcy Court; *provided*, that notice of such satisfaction is served by the Debtors or the Reorganized Debtors, as applicable, on the Holder of such Claim.

        3.      Applicability of Insurance Policies.

        Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything herein to the contrary (including Article VIII), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including Insurers, under any Insurance Policies or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**

A.      *Allowance of Claims and Interests.*

        After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.      *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the primary authority to (1) File, withdraw, or litigate to judgment any objections to Claims; (2) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (3) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided* that, with respect to Class 5 General Unsecured Claims only, the Liquidation Trust shall have the primary authority regarding the actions listed in (1)-(4) above and: *provided further* that the Reorganized Debtors and other parties in interest, including Athos, shall have the right to object to and prosecute objections to such General Unsecured Claims.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.L of the Plan.

C.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  If the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute either (i) the Allowed amount, or (ii) a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court, for all purposes under the Plan (including for purposes of distributions); *provided*, that the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Claims Reserve*

On or before the Effective Date, the Debtors, with the consent of the Plan Sponsor, shall be authorized, but not directed, to establish one or more Disputed Claims Reserves for any Disputed Claims, which Disputed Claims Reserve shall be administered by the Reorganized Debtors.

After the Effective Date, the Reorganized Debtors may, in their sole discretion, hold any property to be distributed pursuant to the Plan, in the same proportions and amounts as provided for in the Plan, in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed after the Effective Date.  The Reorganized Debtors shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III of the Plan solely to the extent of the amounts available in the applicable Disputed Claims Reserves.  To the extent property that would otherwise be held in the Disputed Claims Reserve is New Common Stock, rather than issue such New Common Stock to be held in the Disputed Claims Reserve, the Reorganized Debtors may instead issue out of "treasury stock" or newly issued New Common Stock as Disputed Claims become Allowed Claims as of the Effective Date.

To the extent property (*e.g.*, New Common Stock) is deposited into the Disputed Claims Reserve as opposed to being issued out of "treasury stock" or as newly issued New Common Stock by the Reorganized Debtors directly to Holders as Claims are resolved, then with respect to any of the assets that are subject to potential disputed claims of ownership or uncertain distributions (including, in particular, the Disputed Claims Reserve), as discussed above, the Debtors anticipate that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state, local, and non-U.S. tax purposes.

E.      *Adjustment to Claims Without Objection.*

Any Claim or Interest that has been paid or satisfied, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest; *provided*, that the Reorganized Debtors shall file a notice of satisfaction or other pleading evidencing such satisfactions and serve the same on the Holders of such Claims, or seek an order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claims.

F.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

G.      *Disallowance of Claims.*

Except as otherwise provided herein or in the Confirmation Order, any Claims held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors. All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

H.      *Amendments to Claims; Additional Claims.*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

I.      *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

J.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

K.        *No Interest.*

Interest shall not accrue or be paid on any Disputed Claim during the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.        *Compromise and Settlement of Claims, Interests, and Controversies.*

To the extent provided for by the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. To the extent provided for by the Bankruptcy Code, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.        *Discharge of Claims.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, upon entry of the Confirmation Order, the Debtors shall be discharged to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, subject to the Effective Date occurring.

C.        *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D.        *Release of Liens.*

**Except (1) with respect to the Liens securing the Exit Financing, including the Exit Financing Documents, and any other financing created pursuant to the Exit Financing Documents, and (2) as otherwise provided in the Plan (including, if and as applicable, with respect to Liens securing Other Secured Claims), the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, and the Holders (and the applicable agents of such Holders) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.**

**If any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has Filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are**

45

necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

E.    *Debtor Release.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, or for, the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert(whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, their Estates, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Restructuring Transactions, including the issuance or distribution of Securities pursuant to the Restructuring Transactions, or the distribution of property pursuant to the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Liquidation Trust Claims, (iii) the Non-Released Parties, and (iv) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Financing Documents, or any Claim or Obligation arising under the Plan.

For the avoidance of doubt, the Debtors do not intend to release (i) the Liquidation Trust Claims, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Financing Documents, or any Claim or Obligation arising under the Plan.

F.     *Third-Party Release.*

Notwithstanding anything contained in this Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, each Released Party (other than the Debtors or the Reorganized Debtors) is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, or for the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), before and during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the First Lien Credit Agreement, the Second Lien Credit Agreement, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document, or any Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Restructuring Transactions and/or Plan, or the distribution of property pursuant to the Restructuring Transactions and/or the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) the Liquidation Trust Claims, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to

implement the Plan, including the Exit Financing, the Exit Financing Documents, or any Claim or obligation arising under the Plan.

For the avoidance of doubt, no Non-Released Party shall be a Releasing or a Released Party under the Plan.

G.    *Exculpation.*

Notwithstanding anything contained in this Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the DIP Facility, the DIP Credit Agreement Documents, the Exit Financing, the Exit Financing Documents, the Disclosure Statement, the Plan (including, for avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Exit Financing, the Exit Financing Documents, the Disclosure Statement, the Plan, the Plan Supplement, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

For the avoidance of doubt, no Non-Released Party shall be an Exculpated Party under the Plan.

H.    *Injunction.*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or

in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth above.

The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.E, Article VIII.F, and Article VIII.G hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action has not otherwise been released pursuant to the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

NOTWITHSTANDING THE FOREGOING DEBTOR RELEASE, THIRD-PARTY RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS TO THE UNITED STATES, NOTHING IN THE PLAN OR CONFIRMATION ORDER SHALL LIMIT OR EXPAND THE SCOPE OF THE RELEASE, DISCHARGE OR INJUNCTION TO WHICH THE DEBTORS ARE ENTITLED TO UNDER THE BANKRUPTCY CODE OR  SHALL RELEASE OR DISCHARGE ANY LIABILITIES ARISING UNDER SUBCHAPTER III OF CHAPTER 37 OF TITLE 31 OF THE UNITED STATES CODE (THE "FALSE CLAIMS ACT") OR ANY CRIMINAL LAWS.  THE EXCULPATION, RELEASE AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN AND CONFIRMATION ORDER SHALL NOT BAR THE UNITED STATES FROM EXERCISING ANY POLICE AND REGULATORY POWERS.  THE UNITED STATES IS NEITHER A RELEASED PARTY NOR OR RELEASING PARTY NOTWITHSTANDING THAT IT MAY ACCEPT A DISTRIBUTION UNDER THIS PLAN.

MOREOVER, NOTHING IN THE CONFIRMATION ORDER OR THE PLAN SHALL RELEASE ANY NON-DEBTOR PARTIES FROM ANY LIABILITY TO THE UNITED STATES, INCLUDING BUT NOT LIMITED TO, ANY LIABILITIES ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS, THE FALSE CLAIMS ACT OR ANY CRIMINAL LAWS, NOR SHALL ANYTHING IN THE CONFIRMATION ORDER OR THE PLAN ENJOIN OR LIMIT THE UNITED STATES FROM BRINGING ANY SUCH CLAIM, SUIT, ACTION OR OTHER PROCEEDING AGAINST NON-DEBTOR PARTIES IN ANY COURT OR OTHER TRIBUNAL OF COMPETENT JURISDICTION.

I.      *Protections Against Discriminatory Treatment.*

To the greatest extent allowed by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as noncontingent, or (2) the relevant Holder of a Claim has Filed a

noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

K.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.      *Conditions Precedent to Confirmation of the Plan.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to Article IX.C of the Plan:

1.      the Bankruptcy Court shall have entered the Disclosure Statement Order;

2.      the Bankruptcy Court shall have entered the Confirmation Order; and

3.      the Confirmation Order shall:

(a)     authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the Debtors and Reorganized Debtors, as applicable/necessary, to, among other things: (i) implement the Restructuring Transactions; (ii) issue and distribute the New Common Stock, including on account of any Management Incentive Plan, pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act and Regulation D thereunder; (iii) make all distributions and issuances as required under the Plan, including the New Common Stock; (iv) execute and deliver the Exit Financing Documents and to perform their obligations thereunder; and (v) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)     provide that, pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, if applicable, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

(e)     approve the release, injunction, and exculpation provisions contained in this Plan.

B.      *Conditions Precedent to the Effective Date.*

Except to the extent agreed by the Debtors and the Plan Sponsor, it shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.C of the Plan:

1.      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

2.      the Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect;

3.      the Definitive Documents shall (i) be consistent with the Restructuring Support Agreement and the Settlement Term Sheet and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein and (ii) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties;

4.      the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal;

5.      all actions, documents, and agreements necessary to implement and consummate the Plan as mutually agreed to by the Debtors and the Plan Sponsor shall have been effected and executed;

6.      all Exit Financing Documents shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived other than such conditions that relate to the effectiveness of the Plan and related transactions;

7.      the New Organizational Documents shall be adopted on terms consistent with the Restructuring Support Agreement and the Restructuring Term Sheet;

8.      all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full and the Professional Fee Escrow Account shall have been established and funded pending approval by the Bankruptcy Court;

9.      all invoiced professional fees, expenses, and other amounts required to be paid pursuant to the Restructuring Support Agreement, in any Definitive Document, or in any order of the Bankruptcy Court shall have been paid in full in Cash in accordance with Article II.E of the Plan;

10.     the Liquidation Trust Agreement shall have been executed on terms consistent with the Plan and Settlement Term Sheet; and

11.     any and all requisite governmental, regulatory, and third party approvals and consents shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired or terminated without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions, the financial benefits of such Restructuring Transactions to the Plan Sponsor, or the ability of the Plan Sponsor to participate in the governance of the Reorganized Debtors.

C.      *Waiver of Conditions Precedent.*

The Debtors, with the consent of the Committee (such consent not to be unreasonably withheld), the DIP Lenders (such consent not to be unreasonably withheld), the consent of the Plan Sponsor and Consenting Stakeholders, solely to the extent consistent with the approval rights set forth in the Restructuring Support Agreement, and the consent of Athos  (such consent not to be unreasonably withheld) solely to the extent the treatment of Athos' Claims is affected, and except for the conditions set forth in Articles IX.B.8 and IX B.9 may waive any of the conditions to Confirmation or the Effective Date set forth in Article IX.A or Article IX.B of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

*D.     Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

*E.     Effect of Non-Occurrence of Conditions to Consummation.*

If the Effective Date does not occur with respect to any of Debtors, the Plan shall be null and void with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

# ARTICLE X
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.     Modification of Plan.*

Subject to the limitations contained in the Plan and consistent with the approval rights set forth in the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not resolicit votes on such modified Plan; *provided* that the Committee and Athos shall have consent rights (such consent not to be unreasonably withheld) over such modifications to the extent inconsistent with the Settlement Term Sheet; *provided further* that the Debtors shall notify the U.S. Trustee of such modified Plan prior to seeking Confirmation.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided* that the Committee shall have consent rights (such consent not to be unreasonably withheld) over such modifications to the extent inconsistent with the Settlement Term Sheet; *provided further* that the Debtors shall notify the U.S. Trustee of such modifications.

*B.     Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall constitute approval of all permitted modifications to the Plan occurring after the solicitation thereof but before entry of the Confirmation Order, pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.     Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date with the consent of the Consenting First Lien Term Loan Lenders, the Plan Sponsor, and the DIP Lenders.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Confirmation Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to any Claims or Causes of Action (including, without limitation, whether such Claim or Cause of Action has been released under the Plan and Confirmation Order);

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII hereof;

15.        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

17.        adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

18.        consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.        determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.        hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.        hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.        enforce all orders previously entered by the Bankruptcy Court;

23.        hear any other matter over which the Court has jurisdiction under the Bankruptcy Code;

24.        enter an order or Final Decree concluding or closing the Chapter 11 Cases; and

25.        enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.        *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

*B.*      *Additional Documents.*

On or before the Effective Date, and with the consent of the Plan Sponsor, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Restructuring Support Agreement, and the Settlement Term Sheet. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.*      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided*, however, that any such committee will stay in existence solely for the purpose of filing and prosecuting fee applications. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

*D.*      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*E.*      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*F.*      *Service of Documents.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| **Debtors** | **Counsel to the Debtors** |
| --- | --- |
| SiO2 Medical Products, Inc.<br>2250 Riley St.<br>Auburn, AL 36830<br>Attention: Yves Steffen, Chief Executive Officer<br>E-mail: yves.steffen@sio2med.com | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Facsimile: (212) 446-4900<br>Attention: Brian Schartz, P.C.<br>Email: bschartz@kirkland.com<br><br>and<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Facsimile: (312) 862-2200 |

| | Attention:  Dan Latona; Nick Krislov<br>Email:  dan.latona@kirkland.com;<br>nick.krislov@kirkland.com |
| --- | --- |
| **United States Trustee** | **Counsel to the First Lien Term Loan Lenders and First Lien Term Loan Agent** |
| Office of The United States Trustee<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801 | Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>Attention:  Ari Blaut; Benjamin S. Beller<br>E-mail:  blauta@sullcrom.com; bellerb@sullcrom.com |
| **Counsel to the Initial Plan Sponsors** | **Counsel to the Second Lien Term Loan Lenders and Second Lien Credit Agreement Agent** |
| Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>Attention:  Ari Blaut; Benjamin S. Beller<br>E-mail:  blauta@sullcrom.com; bellerb@sullcrom.com | Katten Muchin Rosenman LLP<br>50 Rockefeller Plaza<br>New York, New York 10020-1605<br>Attention:  Steven Reisman; Shaya Rochester<br>E-mail:  sreisman@katten.com; srochester@katten.com |
| **Counsel to the DIP Lenders and DIP Agent** | **Counsel to the Committee** |
| Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>Attention:  Ari Blaut; Benjamin S. Beller<br>E-mail:  blauta@sullcrom.com; bellerb@sullcrom.com | White & Case LLP<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Attention:  Gregory F. Pesce; Andrew F. O'Neill<br>E-Mail:  gregory.pesce@whitecase.com;<br>aoneill@whitecase.com |

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests; *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

G.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement and the Settlement Term Sheet, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Plan Supplement.*

All documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Plan Supplement has been Filed, copies of the documents contained therein shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.donlinrecano.com/smp or the Bankruptcy Court's website at https://www.deb.uscourts.gov/.  Unless otherwise ordered by the Bankruptcy Court, to the extent any document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

J.      *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors', as applicable and the Plan Sponsor's consent, *provided*, that any such deletion or modification must be consistent with the Restructuring Support Agreement and the Settlement Term Sheet; and (3) nonseverable and mutually dependent.

K.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, the Settlement Term Sheet, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

L.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

[*The remainder of this page is intentionally left blank.*]

Dated:  July 14, 2023

SIO2 MEDICAL PRODUCTS, INC.

By: *Yves Steffen*
Name:  Yves Steffen
Title:    Chief Executive Officer